## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CENTER FOR RECONSTRUCTIVE BREAST SURGERY, LLC., et al.**<br>    **Plaintiffs** | **CIVIL ACTION** |
| **VERSUS** | **NO. 11-806** |
| **BLUE CROSS BLUE SHIELD OF LOUISIANA, et al.**<br>    **Defendants** | **SECTION "E"** |

## ORDER & REASONS

Before the Court are the following six motions:[1] (1) Defendant Arkansas Blue Cross and Blue Shield's Motion to Dismiss Plaintiffs' Fourth Amended, Supplemented and Restated Complaint pursuant to Fed. R. Civ. P. 12(b)(6),[2] (2) Blue Cross Blue Shield of Michigan's ("BCBS Michigan") Motion to Dismiss Plaintiffs' Fourth Amended, Supplemented and Restated Complaint pursuant to Fed. R. Civ. P. 12(b)(6) or, in the alternative, to sever the claims alleged against BCBS Michigan from the claims against the unrelated Defendants, pursuant to Fed. R. Civ. P. 21, and to require a more definite statement pursuant to Fed. R. Civ. P 12(e),[3] (3) Defendants' Renewed Motion to Dismiss pursuant to Rule 12(b)(6),[4] (4) Defendants' Motion to Dismiss for Noncompliance with

---

[1] The Court notes that many of Defendants' motions assert similar arguments. To the extent the Court addresses each argument below as to one motion, the same analysis applies as to the other motions that assert similar arguments.

[2] R. Doc. 238.

[3] R. Doc. 241. Defendant's motion to sever is denied without prejudice to reurge at a later date.

[4] R. Doc. 243 (filed by Defendants Louisiana Health Service & Indemnity Company, Blue Cross and Blue Shield of Alabama, Highmark Inc., Blue Cross and Blue Shield of Mississippi, Wellmark, Inc., Blue Cross of California, Premera Blue Cross, Blue Cross and Blue Shield of Texas, Blue Cross and Blue Shield of Illinois, Blue Cross and Blue Shield of North Carolina, Regence Blue Shield, Blue Cross and Blue Shield of Florida, Regence BlueCross BlueShield of Oregon, Blue Cross and Blue Shield of Oklahoma, Blue Cross and Blue Shield of Nebraska, Inc., Blue Cross and Blue Shield of Tennessee, Anthem Health Plans of Maine, Inc., Anthem Health Plans, Inc., Community Insurance Company, Anthem Health Plans of Virginia, Inc., and BCBSM, Inc.).

this Court's September 30, 2013 Order,[5] (5) Defendants' Motion to Dismiss All Claims Concerning the Service Benefit Plan pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6),[6] and (6) Blue Cross and Blue Shield of Kansas's Motion to Dismiss Plaintiffs' Fourth Amended, Supplemented and Restated Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(2).[7] The Court has reviewed the motions, Plaintiffs' oppositions,[8] Defendants' replies,[9] Plaintiffs' sur-replies,[10] the record, and the law, and now issues this order and reasons.

## I.    BACKGROUND

This matter arises out of the alleged underpayment of medical services by Defendants, numerous Blue Cross Blue Shield health insurance carriers. Plaintiff Center for Restorative Breast Surgery, L.L.C. ("CRBS") is a group of surgeons who perform post-mastectomy breast reconstruction medical services, and Plaintiff St. Charles

---

[5] R. Doc. 244 (filed by Defendants Louisiana Health Service & Indemnity Company, Blue Cross and Blue Shield of Alabama, Highmark Inc., Blue Cross and Blue Shield of Mississippi, Wellmark, Inc., Blue Cross of California, Premera Blue Cross, Blue Cross and Blue Shield of Texas, Blue Cross and Blue Shield of Illinois, Blue Cross and Blue Shield of North Carolina, Regence Blue Shield, Blue Cross and Blue Shield of Florida, Regence BlueCross BlueShield of Oregon, Blue Cross and Blue Shield of Oklahoma, Blue Cross and Blue Shield of Nebraska, Inc., Blue Cross and Blue Shield of Tennessee, Anthem Health Plans of Maine, Inc., Anthem Health Plans, Inc., Community Insurance Company, Anthem Health Plans of Virginia, Inc., and BCBSM, Inc.).

[6] R. Doc. 245 (filed by all Defendants).

[7] R. Doc. 246. Defendant asserts that the Court lacks personal jurisdiction over Kansas BCBS. The Fifth Circuit has found that ERISA's nationwide service of process provision confers personal jurisdiction. *Bellaire General Hosp. v. Blue Cross Blue Shield of Michigan*, 97 F.3d 822, 825–26 (5th Cir. 1996) (citing *Busch v. Buchman, Buchman & O'Brien, Law Firm*, 11 F.3d 1255 (5th Cir. 1994)). Defendant points out that the Fifth Circuit in *Bellaire* had reservations about its ruling and the authority upon which it relied. *See id.* at 826 ("[T]hough we follow *Busch* today and find that the district court properly exercised personal jurisdiction over Blue Cross in this case, we do so with grave misgivings regarding the authority upon which we rely."). Additionally, Defendant argues that the Supreme Court's rulings since *Bellaire* and *Busch* that discuss personal jurisdiction and the need for purposeful availment to confer specific jurisdiction suggest that the Fifth Circuit cases are no longer controlling. R. Doc. 246-2 at p. 14 (citing *J. McIntyre Mach., Ltd. v.* Nicastro, 131 S.Ct. 2780 (2011); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846 (2011)). Despite compelling arguments, this Court is bound by Fifth Circuit precedent that has not been overruled by the Supreme Court or the Fifth Circuit sitting en banc. Accordingly, as to Defendant's motion to dismiss for lack of personal jurisdiction, it is denied.

[8] R. Docs. 251, 252, and 258.

[9] R. Docs. 267, 269, 271, 273, 275, and 277.

[10] R. Docs. 283, 287, and 288.

Surgical Hospital, L.L.C. is a specialty surgical center where the physicians affiliated with CRBS perform the surgeries. Plaintiffs filed this action in two capacities: (1) on behalf of their patients as assignees of their patients' complete ERISA rights, and (2) in their individual capacities to seek recovery under Louisiana state laws for claims resulting from their direct interactions with Defendants.[11]

Plaintiffs' fourth amended complaint asserts that Defendants violated ERISA by (1) breaching their fiduciary duties of loyalty, disclosure, and prudence, (2) failing to determine benefits in accordance with the terms of ERISA plans, (3) failing to supply requested information ERISA requires to be produced, and (4) failing to provide full and fair review under ERISA.[12] Under state law, Plaintiffs assert claims of detrimental reliance, breach of contract, negligent misrepresentation, fraud, and unjust enrichment.[13] Plaintiffs also claim Defendants violated the Louisiana Unfair Trade Practices Act and various provisions of the Louisiana Insurance Code.[14] In response to Plaintiffs' fourth amended complaint, Defendants filed numerous motions to dismiss on various alternative grounds.[15]

## II.    LEGAL STANDARD

A motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) challenges a federal court's subject matter jurisdiction.[16] Under Rule 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."[17] "Sovereign immunity is jurisdictional in

---

[11] R. Doc. 234.
[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *See supra* notes 1–6.
[16] *See* Fed. R. Civ. P. 12(b)(1).
[17] *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998)

nature."[18] "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."[19] If the government has not waived its immunity, "sovereign immunity deprives the court of jurisdiction," and the barred claims must be dismissed by the federal court without prejudice under Rule 12(b)(1).[20] A Rule 12(b)(1) motion "permits the court to consider a broader range of materials" than when resolving a Rule 12(b)(6) motion.[21] When a court's subject matter jurisdiction is factually attacked, the court may consider matters outside of the pleadings.[22]

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a claim if the claimant fails to set forth a factual allegation in support of its claim that would entitle it to relief.[23] Those "'[f]actual allegations must be enough to raise a right to relief above the speculative level.'"[24] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[25] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[26] The Court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the non-moving party,[27] but the Court need not accept

---

(internal quotation marks and citation omitted).

[18] *F.D.I.C. v. Meyer,* 510 U.S. 471, 475 (1994).

[19] *Id.*

[20] *Warnock v. Pecos Cnty., Tex.*, 88 F.3d 341, 343 (5th Cir. 1996). *See also Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 207 (5th Cir. 2009) ("[S]overeign immunity deprives federal courts of jurisdiction to hear claims, and a court finding that a party is entitled to sovereign immunity must dismiss the action for lack of subject-matter jurisdiction.").

[21] *Williams v. Wynne*, 533 F.3d 360, 364, 365 n.2 (5th Cir. 2008).

[22] *Oaxaca v. Roscoe*, 641 F.2d 386, 391 (5th Cir. 1981).

[23] *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).

[24] *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555).

[25] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

[26] *Id.*

[27] *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009).

as true legal conclusions couched as factual allegations.[28] "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."[29]

## III. DISCUSSION

Plaintiffs assert twelve counts in their Fourth Amended Complaint: four asserted as assignees of their patients' ERISA claims and eight asserted in Plaintiffs' individual capacities under Louisiana state law.[30] Defendants' motions to dismiss are addressed below.

### A. Motion to Dismiss under 12(b)(6) as Factually Deficient and Motion to Dismiss for Noncompliance with the Court's September 30, 2013 Order

As the parties are well aware, this is a unique case with respect to the volume of claims and number of Defendants involved. For this reason, the Court will allow Plaintiffs one more opportunity to amend their complaint.[31] Plaintiffs are to file an amended complaint within 30 days of this order. The amended complaint must delete all claims that have been dismissed pursuant to this order. Further, if additional allegations required by the Court's ruling below are not pleaded in the amended complaint, an additional opportunity to amend will not be allowed, and the affected claims will be dismissed.

Defendants contend that Plaintiffs' complaint makes general allegations as to all Defendants and that these allegations are not sufficient to survive a motion to dismiss and further do not comply with the Court's September 30, 2013 order. Plaintiffs assert that by filtering the information found in Exhibit 1, an electronic spreadsheet containing

---

[28] *Iqbal*, 556 U.S. at 678.
[29] *Id.* at 679.
[30] R. Doc. 234 at p. 1.
[31] Although the Court's September order contained guidelines for Plaintiffs' more definite statement, the order did not state that the case would be dismissed for failure to comply. R. Doc. 230.

a list of patients and claims, Defendants can ascertain which claims are asserted against them and by which patients. Rather than listing each patient and claim against each Defendant in numbered paragraphs, the Court will allow Plaintiffs to incorporate an electronic spreadsheet into the amended complaint by reference.

In their amended complaint, Plaintiffs are to include a paragraph under each Count listing those Defendants against whom the claims in that Count are made.[32] Additionally, the amended complaint must contain under each Count an explanation of how to filter and interpret the electronic spreadsheet to identify the factual allegations being made with respect to that Count. This should be done by referencing the column or columns that contain factual allegations with respect to each Count, just as Plaintiffs do in their opposition.[33] In response, Defendants can then either move to dismiss if the allegations thus identified are insufficient to state a claim for relief or admit or deny allegations as to specific claims by referencing the amended complaint and the line numbers in the electronic spreadsheet. In light of Plaintiffs' opportunity to replead, Defendants' motions to dismiss under Rule 12(b)(6) as factually deficient and for noncompliance with the Court's September 30, 2013 order are denied.

As this Court has noted, whether or not a patient is covered by an ERISA plan is a crucial distinction in this case.[34] Defendants continue to assert that Plaintiffs have not distinguished patients covered under ERISA plans from those not covered by ERISA

---

[32] "All Defendants" should only be used when the Count is asserted against each and every Defendant. Otherwise, the Defendants should be listed individually by name.

[33] Plaintiffs provide a count-by-count explanation of how to filter Exhibit 1 in their opposition. R. Doc. 258 at pp. 12–23. For example, Plaintiffs state that for Count II, Failure to Supply Requested Information ERISA Requires to be Produced, the Defendants must filter column "Y" to determine whether or not the allegation applies to this specific claim. By including this explanation in the amended complaint, the factual allegations that appear in the filtered results of Exhibit 1 will be incorporated by reference.

[34] R. Doc. 230 at p. 2.

plans.[35] Plaintiffs respond by stating that Exhibit 1 has a column labeled "ERISA," which when filtered "states in black and white whether it is ERISA."[36] However, not all entries have a "yes" or "no" in that column. Plaintiffs assert that "[w]hen that item is not completed, the column[s] which identif[ies] a 'group number', column 'E', also indicates it is an ERISA plan;" if there is a group number listed, it is an ERISA plan.[37]

Defendants correctly point out that numerous entries in Exhibit 1 are inconsistent. For example, some lines have "no" in the ERISA column F but then have a group number listed in column "E."[38] To the extent Exhibit 1 identifies a patient as being covered by an ERISA plan by listing a plan group number in the Group column or saying "yes" in the ERISA column, the Rule 12(b)(6) motions to dismiss are denied. To the extent the columns are blank or are inconsistent, *i.e.,* have a group number but say "no" in the ERISA column or have no group number designated but say "yes" in the ERISA column, the motion will be granted and the ERISA claims dismissed, unless the electronic spreadsheet attached to the amended complaint affirmatively alleges that the patient is a participant in an ERISA plan.[39]

## B.    Motion to Dismiss Claims Concerning the Service Benefit Plan

Defendants move to dismiss all claims concerning the Service Benefit Plan ("SBP"). The SBP is a health benefits plan for federal employees.[40] Defendants assert, and Plaintiffs do not contest, that the fourth amended complaint contains claims that relate to the SBP, including those asserted against Defendant Federal BlueCross Blue

---

[35] R. Doc. 244-1 at p.7.
[36] R. Doc. 258 at p. 13.
[37] *Id.*
[38] *E.g.,* R. Doc. 234, ex. 1, ln. 9.
[39] Plaintiffs are strongly encouraged to ensure that the information contained in the electronic spreadsheet attached to the amended complaint is factually correct and as complete as possible. The Court noted numerous inconsistencies in Exhibit 1 as well as the many columns lacking information.
[40] R. Doc. 245-1 at p. 1.

Shield.[41]

ERISA Claims Concerning the Service Benefit Plan

Defendants assert that ERISA "does not apply to health plans for government employees."[42] The SBP is instead governed by the Federal Employees Health Benefits Act ("FEHBA"), which establishes a comprehensive scheme for the regulation of FEHBA-governed plans.[43] Thus, Defendants argue that all ERISA allegations made by Plaintiffs are not sufficient to state claims on behalf of patients enrolled in the SBP.[44]

ERISA's coverage provision states: "The provisions of [ERISA] shall not apply to any employee benefit plan if—(1) such plan is a governmental plan. . . ."[45] A governmental plan is "a plan established or maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing."[46] FEHBA authorizes the government to contract with private carriers to provide health insurance to federal employees.[47] The Service Benefit Plan is one such contract.[48]

As the SBP is a governmental plan, the Court agrees with Defendants that benefits claims for federal employees enrolled in the SBP are not governed by ERISA; thus, all of Plaintiffs' ERISA claims for patients enrolled in the SBP are dismissed.[49]

---

[41] R. Doc. 245-1 at p. 2. The Court counts 105 claims against Federal BlueCross Blue Shield. R. Doc. 234, ex. 1. Plaintiffs do not deny Defendants' assertions that there are claims relating to the Service Benefit Plan. *See* R. Docs. 251, 252, and 258. Plaintiffs do, however, argue that they have an independent basis for bringing the state law claims in their individual capacities. R. Doc. 252 at p. 1.

[42] R. Doc. 245.

[43] R. Doc. 245-1 at p. 2.

[44] *Id.* at pp. 1–2, 6–7.

[45] 29 U.S.C. § 1003(b)(1).

[46] *Id.* § 1002(32).

[47] *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. at 677, 682–83 (2006).

[48] *Id.* at 682 ("Largest of the plans for which OPM has contracted, annually since 1960, is the Blue Cross Blue Shield Service Benefit Plan (Plan), administered by local Blue Cross Blue Shield companies.").

[49] Additionally, Defendants state that the proper party to be sued for benefits disputes relating to the SBP is the United States. R. Doc. 245-1 at p. 7. The Code of Federal Regulations provides that the Office of Personnel Management ("OPM") is the proper party to sue when there is a benefits disputes under a

8

State Law Claims Relating to the Service Benefit Plan

Defendants move to dismiss all state law claims concerning patients enrolled in the Service Benefit Plan on the basis of sovereign immunity pursuant to Rule 12(b)(1) and FEHBA preemption pursuant to 12(b)(6).[50] With respect to sovereign immunity, Plaintiffs respond by stating that "sovereign immunity is a defense, not a deficiency of pleading" and that there is no immunity because the master contract illustrates that the money would not be paid by the Treasury.[51] Plaintiffs' response to the FEHBA preemption argument is that their state law claims are brought in their independent capacities for claims resulting from their own interactions with Defendants, not in their capacities as assignees.[52] Because Defendants' sovereign immunity and preemption attacks have been brought together in the same motion, the Court must first consider the jurisdictional attack under 12(b)(1).[53]

Defendants claim that Plaintiffs' state law claims, even if brought in Plaintiffs' individual capacities, are barred under the doctrine of sovereign immunity because sovereign immunity extends to contractors in suits where the United States is the real party in interest and a judgment would be satisfied by the federal Treasury.[54] The Fifth Circuit has yet to directly address whether a FEHBA provider is entitled to sovereign immunity;[55] however, it has found an extension of sovereign immunity to private carriers in the Medicare context because "the United States is the real party in

FEHBA plan—not the health insurance carrier. 5 C.F.R. § 890.107.

[50] R. Doc. 245-1.

[51] R. Doc. 252 at p. 21.

[52] *Id.* at p. 10.

[53] *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) ("When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits.").

[54] R. Doc. 245-1 at p. 7 (citing *Matranga v. Travelers Ins. Co.*, 563 F.2d 677, 677 (5th Cir. 1977) (per curiam)).

[55] *See Innova Hosp. San Antonio, L.P. v. Blue Cross Blue Shield of Georgia, Inc.*, No. 12-1607, 2014 WL 360291, at *4 (N.D. Tex. Feb. 3, 2014).

interest."[56]

Under FEHBA, "the Federal Government pays about 75% of the premiums [for health-benefits plans for federal employees]; the enrollee pays the rest. Premiums thus shared are deposited in a special Treasury Fund, the Federal Employees Health Benefits Fund. Carriers draw against the Fund to pay for covered health-care benefits."[57] "The Fund is available . . . to pay expenses for administering [benefits for federal employees]," including "liabilities incurred for covered health care services" and "legal expenses incurred in the litigation of benefit payments . . . ."[58] The federal regulations, which are incorporated into Defendants' Master Contract, state that a carrier is permitted to charge to the government "all actual, allowable, allocable and reasonable expenses incurred *in the adjudication of subscriber benefit claims or incurred in the Carrier's overall operation of the business.*"[59] "Unless otherwise stated in the contract," this includes "legal expenses incurred in the litigation of benefit payments."[60]

In a district court case, medical service providers brought state law claims against a Blue Cross Blue Shield health insurance carrier administering the Service Benefit Plan.[61] The parties made nearly identical arguments to those currently before the Court concerning sovereign immunity; the court found that "sovereign immunity bars

---

[56] *Matranga*, 563 F.2d at 677.

[57] *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 684 (2006) (internal citations omitted).

[58] 5 U.S.C. § 8909(a)(2); 48 C.F.R. § 1652.216–71(b)(2)(i), (ii).

[59] 48 C.F.R. § 1652.216-71(b)(2)(ii); R. Doc. 245-4 at p. 48 (2013 Master Contract § 3.2(b)(2)(i)) (emphasis added).

[60] 48 C.F.R. § 1652.216-71(b)(2)(ii); R. Doc. 245-4 at p. 48. Plaintiffs argue that section 5.41 of the master contract "clearly says the government is not responsible for losses occasioned by the contractor's deficiencies and then makes a provision for Contractor 'insurance, or has a reserve for self-insurance covering loss or damage suffered by the Government through the Contractor's performance of services.'" R. Doc. 252 at p. 20. The Court finds this interpretation of the contract language to be incorrect when the section is read in its entirety.

[61] *Innova Hosp. San Antonio, L.P. v. Blue Cross Blue Shield of Georgia, Inc.*, No. 12-1607, 2014 WL 360291 (N.D. Tex. Feb. 3, 2014).

Plaintiffs' [state law] claims . . . that relate to the FEHBA Plan enrollees."[62] Although the providers argued that their state law claims resulted from misrepresentations by a carrier to the providers in their individual capacities, as Plaintiffs argue here, the court nonetheless found that "the[] claims for damages. . . concern Defendant's 'liabilities incurred for covered health care services' and 'legal expenses incurred in the litigation of benefits payments.'"[63] Given "the funding and administration of the Fund and the Master Contracts' reimbursement language," the court found that "it is clear that an order requiring Defendant to pay damages for the representations would be paid by the federal [T]reasury."[64]

This Court agrees that any awards for state law claims brought by Plaintiffs in their individual capacities against the health care carriers would be paid by the federal Treasury and, thus, are barred by sovereign immunity.[65] Accordingly, this Court does not have subject matter jurisdiction over any state law claims relating to the Service Benefit Plan, and those claims must be dismissed.

## C.    Motions to Dismiss ERISA Claims

Defendants set forth numerous arguments relating to the various ERISA claims. Defendant Blue Cross and Blue Shield of Kansas asserts that any claim with respect to a patient who has not exhausted administrative remedies must be dismissed.[66] Before asserting any ERISA claims in federal court, claimants "must first exhaust available administrative remedies under the [ERISA] plan before bringing suit to recover

---

[62] 2014 WL 360291, at *6.
[63] *Id.* (citing *Mun. of Mayaguez v. Corp. Para el Desarrollo del Oeste, Inc.*, 726 F.3d 8, 16 n.9 (1st Cir. 2013) (noting "[a]ll financial risk [under FEHBA] is . . . borne by the government, not the carrier")).
[64] *Id.*
[65] Because the Court finds Plaintiffs' state law claims barred by sovereign immunity, it need not address FEHBA preemption under Rule 12(b)(6).
[66] R. Doc. 246-2 at p. 9.

benefits."[67] However, there is an exception if resorting to those administrative remedies would be futile.[68]

Indeed, Exhibit 1 contains claims where the column labeled "Second Appeal" is left blank or says none taken.[69] However, Plaintiffs state in their complaint that "[a]ll of the appeals . . . have been futile because of Defendants' purposeful refusal to provide information to Plaintiffs."[70] At this stage of the proceedings, the Court must accept the complaint's allegations as true and deny the motion to dismiss.

With respect to the other arguments relating to the ERISA claims, the motions are denied as moot because of the opportunity given to Plaintiffs to file an amended complaint.[71]

D.     **Motions to Dismiss State Law Claims**

Defendants set forth numerous arguments for why Plaintiffs' state law claims must be dismissed.

ERISA Preemption

First, Defendants argue that ERISA preempts most of Plaintiffs' state law claims, specifically those of detrimental reliance/breach of oral contract, breach of contract, negligent misrepresentation, fraud, violation of Louisiana's Unfair Trade Practices Acts, violation of Louisiana Revised Statutes § 22:1821, and unjust enrichment.[72] Both

---

[67] *Bourgeois v. Pension Plan for Emp. of Santa Fe Int'l Corps.*, 215 F.3d 475, 479 (5th Cir. 2000).
[68] *Id.* (citing *Hall v. Nat'l Gypsum Co.*, 105 F.3d 225, 232 (5th Cir.1997)).
[69] *E.g.,* R. Doc. 234, ex. 1, ln. 52.
[70] R. Doc. 234 at p. 37.
[71] The Court notes that, despite certain deficiencies in the fourth amended complaint, it is inclined to allow the ERISA claims that have not been dismissed in this order to proceed past the motion to dismiss stage. Provided Plaintiffs remedy the deficiencies recognized herein, the Court believes Plaintiffs will have appropriately alleged sufficient and plausible claims as assignees of their patients' ERISA rights.
[72] R. Doc. 243-1 at p. 4. The only state law claim that would remain is the claim under the Louisiana Insurance Code for violation of Louisiana Revised Statutes § 22:1077.

complete and conflict preemption may arise under ERISA.[73] Defendants state: "Since the applicability of ERISA to this lawsuit is not in dispute, . . . either of the two paths to ERISA preemption may apply."[74] Defendants assert that "[s]ince [Plaintiffs] seek to enforce their assigned rights under the relevant ERISA-governed plans, any attempt to enforce alleged state-law rights that arise out of and relate to the very same ERISA-governed plan" are preempted.[75] They Claim that "[e]ach of the preempted state law claims brought by [Plaintiffs] requires the Court to undertake an analysis of the benefit plans at issue in order to determine whether [Plaintiffs] are entitled to relief."[76]

With respect to complete preemption, "[a] state law claim falls within the scope of ERISA and is completely preempted 'if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and . . . there is no other independent legal duty that is implicated by a defendant's actions.'"[77] As is the case here, "[w]hether a third-party health care provider's claims are completely preempted by ERISA depends on precisely what rights the provider seeks to enforce and what duty it alleges has been breached."[78] If the claim is asserted "in a derivative capacity pursuant to an assignment of [a] patient's rights," then "[t]hat kind of derivative claim is completely preempted by ERISA."[79]

But "if a health care provider can assert a right to payment based on some separate agreement between itself and an ERISA defendant (such as a provider

---

[73] *Ellis v. Liberty Life Assur. Co. of Boston*, 394 F.3d 262, 274–76 (5th Cir. 2004).
[74] R. Doc. 243-1 at p. 4.
[75] *Id.* at p. 9.
[76] *Id.*
[77] *Ctr. For Restorative Breast Surgery, L.L.C. v. Humana Health Ben. Plan of Louisiana, Inc.*, No. 10-4346, 2011 WL 1103760, at *2 (E.D. La. Mar. 22, 2011) (Fallon, J.) (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004)).
[78] *Id.* (citing *Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1346–47 (11th Cir. 2009)).
[79] *Id.* (citing *Conn.*, 591 F.3d at 1347).

agreement or *an alleged verification of reimbursement prior to providing medical services*), that direct claim is not completely preempted by ERISA."[80] Importantly, "[a] health care provider may have both a valid assignment of its patient's rights and a direct claim arising under state law and can elect to assert . . . both of those claims"[81] because "the mere existence of an assignment . . . under the ERISA plan is jurisdictionally irrelevant *so long as* the provider is not actually seeking to enforce that derivative claim."[82] Further, "a provider's claims [are not] preempted [just] because it could recover an amount equal to the amount of benefits a patient could recover under the ERISA plan."[83]

Plaintiffs in their fourth amended complaint state that, although they bring the ERISA claims as assignees of their patients' ERISA rights, the state law claims are brought on their own behalf "as independent health care providers seeking redress under Louisiana laws for the unlawful acts and inactions of Defendants for their direct dealings with the Plaintiffs."[84] Accordingly, because Plaintiffs bring all of the state law claims in their individual capacities as health care providers, the claims are not completely preempted.

If a claim cannot be brought under § 502, it is still subject to conflict preemption. ERISA's broad preemption provision provides that state law claims are preempted by § 514(a) "insofar as they may now or hereafter relate to any employee benefit plan."[85] The

---

[80] *Id.* (emphasis added) (citing *Conn.,* 591 F.3d at 1346–47).

[81] *Id.* (citing *Conn.,* 591 F.3d at 1347).

[82] *Id.*

[83] *Ctr. For Restorative Breast Surgery LLC v. Humana Health Ben. Plan of Louisiana, Inc.,* No. 10-4346, 2014 WL 1276503, at *7 (E.D. La. Mar. 27, 2014) (Fallon, J.) (citing *Jefferson Parish Hosp. Serv. Dist. No. 2, Parish of Jefferson La. v. Principal Health Care of La., Inc.,* 934 F. Supp. 206, 208 (E.D. La. 1996) (Fallon, J.); *Intra-Operative Monitoring Servs., Inc. v. Humana Health Benefit Plan of La., Inc.,* 04-2621, 2005 WL 1155847, at *2 (E.D. La. May 5, 2005) (Zainey, J.)).

[84] R. Doc. 234 at p. 1.

[85] 29 U.S.C. § 1144(a).

Fifth Circuit has stated that a state law cause of action is conflict preempted "if (1) the state law claim addresses an area of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan; and (2) the claim directly affects the relationship between the traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries."[86]

Despite Defendants' assertions, Plaintiffs' state law claims of detrimental reliance, breach of contract, fraud, and negligent misrepresentation are not brought by Plaintiffs in their capacities as assignees of ERISA rights and do not address areas of exclusive federal concern because the claims arise from Defendants' alleged representations made to Plaintiffs directly.[87] Additionally, "it has been recognized that the relationship between '[t]he plan and a third party [health care] provider" is not a "relationship between the traditional ERISA entities.'"[88] For these reasons, Plaintiffs' state law claims are not conflict preempted, and the motions to dismiss on this basis are denied.

Plaintiffs' remaining state law claims as well as Defendants' alternative arguments set forth in the motions to dismiss are addressed below by Count.

Counts V and VI—Detrimental Reliance and Breach of Contract(s)[89]

Defendants assert that Plaintiffs' detrimental reliance Count with respect to certain claims must be dismissed because they cannot show that their alleged reliance was reasonable.[90] One of the essential elements of a detrimental reliance claim is that

---

[86] *Hubbard v. Blue Cross & Blue Shield Ass'n*, 42 F.3d 942, 945 (5th Cir. 1995) (citing *Weaver v. Emp'rs Underwriters, Inc.*, 13 F.3d 172, 176 (5th Cir. 1994); *Mem'l Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 245 (5th Cir. 1990)).
[87] *See Ctr. For Restorative Breast Surgery*, 2014 WL 1276503, at *6–7.
[88] *Id.* at *6 (quoting *Jefferson Parish Hosp.*, 934 F. Supp. at 208).
[89] R. Doc. 234 at p. 50; *Id.* at p. 52.
[90] R. Doc. 243-1 at p. 16.

there must have been "justifiable reliance on the representation."[91] Defendants state that Plaintiffs cannot meet this element because this suit was originally filed on April 6, 2010 in state court and included a detrimental reliance claim in the original petition.[92] At least as to any claims post-dating the filing of the lawsuit, Defendants argue Plaintiffs cannot show as a matter of law that they were reasonable in relying on any alleged oral representation as to the expected reimbursement.[93]

"Whether a party reasonably relied on a representation is usually a question of fact."[94] The Court cannot determine at this stage whether Plaintiffs were reasonable in relying on Defendants' representations.[95] Similarly, the breach of oral contract claim survives this stage. The motions to dismiss these claims are denied.

Counts VII and IX—Negligent Misrepresentation(s) and Fraud under Louisiana Law[96]

Defendants argue that Plaintiffs' claims for negligent misrepresentation and fraud must be dismissed for failure to plead with the requisite particularity because numerous rows in Exhibit 1 fail to identify a speaker or date of the alleged fraud or negligent misrepresentation.[97] Federal Rule of Civil Procedure 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."[98] Negligent misrepresentation claims are also subject to the heightened particularity pleading requirement when based on the same alleged facts

---

[91] *Drs. Bethea, Moustoukas and Weaver LLC v. St. Paul Guardian Ins. Co.*, 376 F.3d 399, 403 (5th Cir. 2004); LA. CIV. CODE art. 1967.
[92] R. Doc. 1. at p. 5.
[93] R. Doc. 243-1 at p. 16.
[94] *Caplan v. Ochsner Clinic, L.L.C.*, 799 F. Supp. 2d 648, 651 (E.D. La. 2011) (Fallon, J.) (citing *Drs. Bethea*, 376 F.3d at 403).
[95] Although it does seem as though relying on representations post-lawsuit would be unreasonable, more information is needed. For example, from the pleadings, it cannot be determined whether other claims during this period were properly paid, as Exhibit 1 only contains those allegedly underpaid.
[96] R. Doc. 234 at p. 54; *Id.* at p. 57 (erroneously numbered as Count VIII).
[97] R. Doc. 243-1 at p. 17.
[98] FED. R. CIV. P. 9(b).

as a fraud claim, as is the case here.[99] The level of particularity needed to meet the heightened standard differs from case to case.[100]

In the fourth amended complaint, Plaintiffs state that "Defendants' employees" made representations during the pre-verification process as to the allowable amount covered under the plans.[101] The sufficiency of allegations in a complaint is determined on a case-by-case basis. The Court believes that in this case Plaintiffs adequately pleaded the statements alleged to be fraudulent, who made the statements (Defendants' employees), why the statements were made, and why they were fraudulent. The motions to dismiss for failure to plead with particularity are denied.

Count VIII—Violation of Louisiana's Unfair Trade Practices Acts[102]

Plaintiffs assert that Defendants violated the Louisiana Unfair Trade Practices Act ("LUTPA")[103] and the unfair trade practices provisions of the Louisiana Insurance Code[104] by knowingly engaging in various misrepresentations and omissions to induce consumers to elect or continue membership with Defendants.[105] Defendants argue that these claims must be dismissed because LUTPA does not regulate the conduct of insurers and there is no private right of action under the Louisiana Insurance Code.[106]

Louisiana Revised Statutes § 51:1406, which contains exemptions to LUTPA, states that the provisions of the Act do not apply to "actions or transactions subject to the jurisdiction of . . . the insurance commissioner . . . [or] insurance regulators of other

---

[99] *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 723 (5th Cir. 2003).
[100] *Id.* at 724.
[101] R. Doc. 234 at p. 58.
[102] R. Doc. 234 at p. 55 (erroneously numbered as Count VII).
[103] LA. REV. STAT. §§ 51:1401–1430. Plaintiffs' complaint specifically references § 51:1409. R. Doc. 234 at p. 56.
[104] LA. REV. STAT. §§ 22:1961–1973. Plaintiffs' complaint specifically references §§ 22:1963 and 1964. R. Doc. 234 at p. 56.
[105] R. Doc. 234 at p. 56.
[106] R. Doc. 243-1 at pp. 19–21.

states."[107] Although the Fifth Circuit concluded in *Lamarque v. Massachusetts Indemnity & Life Insurance Company* that, despite this language, an individual can bring an unfair trade practices claim against an insurer,[108] the majority of federal and state courts confronting this issue since have rejected *Lamarque*'s conclusion.[109] This Court agrees with the majority's reasoning: the clear language of LUTPA bars "actions or transactions subject to the jurisdiction of the . . . insurance commissioner . . . and insurance regulators of other states."[110] Instead, it is the "duty of the commissioner of insurance to administer the provisions of [the Louisiana Insurance] Code."[111]

The Louisiana Insurance Code contains its own provisions regulating unfair trade practices, which Plaintiffs specifically reference in the complaint under this Count.[112] However, there is no private right of action for unfair trade practices under the Insurance Code;[113] any claims under §§ 22:1963 and 1964 likewise fall under the

---

[107] LA. REV. STAT. § 51:1406(1).

[108] 794 F.2d 197, 198 (5th Cir. 1986) (stating that "[i]f the provisions of LUTP aren't applicable to claims within the jurisdiction of the insurance commissioner, the LUTP can hardly be used to create jurisdiction on the insurance commissioner's part. The district court did not err in denying the motion for summary judgment on this ground").

[109] *See, e.g., Ctr. for Restorative Breast Surgery, L.L.C., et al. v. Humana Health Benefit Plan of Louisiana, Inc., et al.*, No. 10-4346, 2014 WL 1276503, at *7 (E.D. La. Mar. 27, 2014) (Fallon, J.) (rejecting *Lamarque*'s conclusion, stating that "an unfair trade practice involving insurance is within the jurisdiction of the commissioner of insurance and thus outside the scope of the LUTPA"); *Bambulis v. Protective Life Ins. Co.*, No. 11-2256, 2012 WL 6161967, at *2 (E.D. La. Dec. 11, 2012) (Lemelle, J.) (recognizing *Lamarque*, rejecting it, and dismissing Plaintiff's claims under LUTPA); *LeMarie v. Lone Star Life Ins. Co.*, No. 00-0570, 2000 WL 739277, at *4 (E.D. La. June 7, 2000) (Duval, J.) (same); *Travelers Indem. Co. v. Powell Ins. Co.*, No. 95-4188, 1996 WL 578030, at *4–5 (Vance, J.) (same); *Century Sur. Co. v. Blevins*, No. 14-411, 2014 WL 3407098, at *5–6 (W.D. La. July 10, 2014) (Haik, J.) (same); *West v. Fireman's Fund Ins. Co.*, 683 F. Supp. 156, 156–57 (M.D. La. 1988) (Polozola, J.) (same); *Phillips v. Patterson Ins. Co.*, 813 So. 2d 1191, 1195–96 (La. App. 3 Cir. 2002) (following *West* and holding that plaintiffs could not maintain an action under LUTPA); *Alarcon v. Aetna Cas. & Sur. Co.*, 538 So. 2d 696, 699–700 (La. App. 5 Cir. 1989) (same).

[110] LA. REV. STAT. § 51:1406(1).

[111] *Id.* § 22:2.

[112] R. Doc. 234 at p. 56 (citing LA. REV. STAT. § 22:1963 (prohibiting "any trade practice which is . . . an unfair method of competition or an unfair or deceptive act or practice in the conduct of the business of insurance"); § 22:1964 (prohibiting misrepresentations and false advertising of insurance policies and unfair claims settlement practices)).

[113] *See Ctr for Restorative Breast Surgery*, 2014 WL 1276503, at *7 (E.D. La. Mar. 27, 2014) (Fallon, J.) ("[T]he Louisiana Insurance Code provides its own remedies for unfair trade practices. . . . [A]n unfair trade practice involving insurance is within the jurisdiction of the commissioner of insurance. . . .");

province of the commissioner of insurance.[114] For this reason, Plaintiffs' claims under LUTPA and the unfair trade practices provisions of the Louisiana Insurance Code must be dismissed.[115]

Counts X—Violation of Louisiana Revised Statutes § 22:1077[116]

Plaintiffs claim Defendants violated Louisiana Revised Statutes § 22:1077, which details the required coverage for reconstructive surgery following mastectomies, when they denied or diminished Plaintiffs' claims for reimbursement for services to fully restore breasts on the basis of medical necessity.[117] Defendants assert this claim must be dismissed because Plaintiffs lack a private right of action to enforce § 22:1077 of the Louisiana Insurance Code.[118]

The Louisiana Insurance Code grants broad enforcement power to the commissioner of insurance.[119] Absent express language granting a private right of action, it is the duty of the commissioner of insurance to enforce the Insurance Code.[120]

---

*Nungesser v. New York Life Ins. & Annuity Corp*, 08-3964, 2009 WL 2707441, at *1 (E.D. La. Aug. 25, 2009) (Lemelle, J.) ("[T]his court held that Plaintiff did not have a private right of action under La. R.S. 22:1213 and 1214 [now cited as §§ 22:1963 and 1964].").

[114] LA. REV. STAT. § 22:2 ("It shall be the duty of the commissioner of insurance to administer the provisions of this Code."); *id.* § 22:1967 ("The commissioner of insurance shall have the power to examine and investigate the affairs of every person engaged in the business of insurance, including violations of R.S. 22:1902 et seq., in order to determine whether such person has been or is engaged in any unfair method of competition or in any unfair or deceptive act or practice prohibited by this Part.").

[115] Because the Court finds that an individual may not assert a claim under the statute, it is unnecessary to determine whether such a claim would be preempted by ERISA.

[116] R. Doc. 234 at p. 59 (erroneously numbered as Count IX).

[117] *Id.*

[118] R. Doc. 243-1 at p. 22.

[119] LA. REV. STAT. § 22:2 ("It shall be the duty of the commissioner of insurance to administer the provisions of this Code.").

[120] *Id.*; *Crescent City M Dealership, L.L.C. v. Mazda Motor of America, Inc.*, No. 00-1620, 2000 WL 1372965, at *2–3 (E.D. La. Sept. 22, 2000) (Vance, J.) ("[T]he grant of such broad regulatory and enforcement powers to a state agency forecloses a private right of action, absent language expressly granting one. Further, the Louisiana legislature knows how to create a private right of action when it intends to do so."). In *Crescent City*, the court likened the Insurance Code's grant of power to the Insurance Commissioner, as discussed in *Clausen v. Fidelity and Deposit Co. of Maryland*, 660 So. 2d 83, 85–86 (La. App. 1 Cir. 1995), to those powers granted to the Louisiana Motor Vehicle Commission under the Louisiana Motor Vehicles Act. 2000 WL 1372965, at *2–3.

Section 1077 does not contain such language granting a private right of action.[121] Further, the subpart encompassing § 22:1077 contains enforcement provisions clearly granting enforcement power of provisions under the same subpart to the commissioner of insurance. Section 1071 states that "the commissioner of insurance shall enforce the provisions of this Subpart" and makes numerous references to the commissioner throughout the provisions.[122] For these reasons, Plaintiffs' claim under § 22:1077 of the Louisiana Insurance Code is dismissed.

Counts XI—Violation of Louisiana Revised Statutes § 22:1821[123]

Plaintiffs claim that Defendants violated Louisiana Revised Statutes § 22:1821, which provides various requirements for the payment of health insurance claims, by failing to pay the full amount required for the procedures performed after written notices and proof of claims were furnished to them.[124] Plaintiffs seek penalties and attorney's fees under the statute.[125] Section 22:1821 states: "Failure to comply with the provisions of this Section shall subject the insurer to a penalty payable *to the insured* of double the amount of the health and accident benefits due under the terms of the policy or contract during the period of delay, together with attorney fees. . . ."[126]

Importantly, Plaintiffs stated in their complaint that they are seeking redress under Louisiana state laws in their individual capacities, not in their roles as assignees of the insureds.[127] As the statute states that the penalty is payable to the insured, i.e., the patients, Plaintiffs are not the proper parties to bring this claim. Accordingly, this Count

---

[121] La. Rev. Stat. § 22:1077.
[122] *Id.* § 22:1071. Sections 1071 and 1077 both fall within Subpart C. *See Id.* §§ 22:1061–1079.
[123] R. Doc. 234 at p. 60 (erroneously numbered as Count X).
[124] R. Doc. 234 at pp. 60–61.
[125] *Id.*
[126] La. Rev. Stat. § 22:1821(A).
[127] R. Doc. 234 at p. 1.

is dismissed.

<u>Counts XII—Unjust Enrichment</u>[128]

Plaintiffs state that, to the extent they are without other remedies at law, they bring a claim that Defendants were unjustly enriched by "retain[ing] monies that rightfully belong to Plaintiffs and/or Defendants['] insured, beneficiaries or participants services to the subscribers" "by undertaking the unfair, wrongful, deceptive and/or unlawful practices described in" the complaint.[129] Defendants assert that this claim is not cognizable.[130]

One of the required elements for a successful unjust enrichment claim is that "'there is no other remedy at law, i.e., the action is subsidiary or corrective in nature.'"[131] The Louisiana Supreme Court has stated that "[t]he unjust enrichment remedy is 'only applicable to fill a gap in the law where no express remedy is provided,'"[132] and "[t]he mere fact that a plaintiff does not successfully pursue another available remedy does not give the plaintiff the right to recover under the theory of unjust enrichment."[133]

Here, Plaintiffs assert claims both as assignees of their patients for failure of Defendants to determine benefits in accordance with ERISA plan terms and in Plaintiffs' individual capacity for breach of oral contract.[134] "Louisiana law provides that no unjust enrichment claim shall lie when the claim is based on a relationship that is controlled by

---

[128] R. Doc. 234 at p. 61 (erroneously numbered as Count XI).
[129] *Id.*
[130] R. Doc. 243-1 at p. 23.
[131] *Drs. Bethea, Moustoukas & Weaver LLC v. St. Paul Guardian Ins. Co.*, 376 F.3d 399, 407 (5th Cir. 2004) (quoting *Minyard v. Curtis Products, Inc.*, 205 So.2d 422, 432 (La. 1967)).
[132] *Walters v. MedSouth Record Mgmt., LLC*, 38 So.3d 241, 242 (La. 2010) (per curiam) (quoting *Mouton v. State*, 525 So.2d 1136, 1142 (La. App. 1 Cir. 1988)).
[133] *Id. See also JP Mack Indus. LLC v. Mosaic Fertilizer, LLC*, 970 F. Supp. 2d 516, 521–22 (E.D. La. 2013) (Feldman, J.).
[134] R. Doc. 234 at pp. 38, 50, 52.

an enforceable contract."[135] Because another remedy is available under Louisiana law, Plaintiffs' unjust enrichment claim must be dismissed.

Prescription

Defendants also assert that, if the state law claims are not preempted by ERISA and sufficiently state a claim, certain claims have prescribed because Louisiana recognizes a one-year prescriptive period for delictual actions.[136] Plaintiffs respond by stating that prescription was interrupted; further, Plaintiffs argue the day on which the injury was sustained turns on when Defendants denied Plaintiffs' final appeal.[137]

The prescriptive period "commences to run from the day injury or damage is sustained."[138] Damage must be determinable, and "'[d]amage is sustained, for prescription purposes, only when it has manifested itself with sufficient certainty to be susceptible to proof in a court of justice.'"[139] Additionally, "'[c]ourts should resolve doubts about a prescription question in favor of giving the litigant his day in court.' 'Prescriptive statutes are strictly construed against prescription and in favor of the obligation sought to be extinguished.' 'Accordingly[,] if a petition does not show that it has prescribed on its face, the burden is on the party raising the objection of prescription to prove the facts to support prescription.'"[140]

In this case, the fourth amended complaint does not show on its face that any claims have prescribed, and Defendants who assert the motions have not met their

---

[135] *Drs. Bethea*, 376 F.3d at 408 (affirming a district court's dismissal of Plaintiff's unjust enrichment claim with prejudice).
[136] LA. CIV. CODE art. 3492; R. Doc. 238-2 at p. 21.
[137] R. Doc. 251 at p. 2 ("Moreover, the day the injury was sustained was when Blue Cross Blue Shield Arkansas denied Plaintiff's final appeal for additional reimbursement.").
[138] LA. CIV. CODE art. 3492.
[139] *Global ADR, Inc. v. City of Hammond*, No. 03-457, 2003 WL 22533645, at *2 (E.D. La. Nov. 3., 2003) (Engelhardt, J.) (quoting *Landry v. Blaise, Inc.*, 774 So.2d 187, 190 (La. App. 4 Cir. 2000) and citing *Orthopaedic Clinic of Monroe v. Ruhl*, 786 So.2d 323, 328 (La. App. 2 Cir. 2001)).
[140] *Id.* (quoting *Ruhl*, 786 So.2d at 328; *Landry*, 774 So.2d at 190).

burden of proving prescription at this stage. Accordingly, under the 12(b)(6) standard, Defendants' prescription argument fails, and the motions to dismiss are denied.

## IV.  CONCLUSION

For the foregoing reasons,

**IT IS SO ORDERED** that Defendant Blue Cross Blue Shield of Michigan's motion to dismiss is **GRANTED** with respect to the request for a more definite statement. Plaintiffs are directed to file an amended complaint. The remainder of the motion, including the motion to sever, is **DENIED**.[141]

Defendants' renewed motion to dismiss is **GRANTED IN PART** as to Plaintiffs' LUTPA, Louisiana Insurance Code, and unjust enrichment claims.[142] The motion is **DENIED IN PART** as to Plaintiffs' ERISA, detrimental reliance, breach of contract claims, fraud, and negligent misrepresentation claims.[143]

Defendants' motion to dismiss all claims concerning the Service Benefit Plan is **GRANTED**.[144]

**IT IS FURTHER ORDERED** that Defendants' motion to dismiss for failure to comply with this Court's September 30, 2013 order is **DENIED**.[145]

Blue Cross and Blue Shield of Kansas's motion to dismiss for failure to exhaust administrative remedies is **DENIED**, and the motion to dismiss for lack of personal jurisdiction is **DENIED**.[146]

Any unaddressed motions or arguments are **DISMISSED AS MOOT** in light of Plaintiffs' opportunity to replead.

---

[141] R. Doc. 241.
[142] R. Doc. 243.
[143] *Id.*
[144] R. Doc. 245.
[145] R. Doc. 244.
[146] R. Doc. 246.

**IT IS ORDERED** that Plaintiffs shall file an amended complaint and electronic spreadsheet addressing the deficiencies identified herein on or within 30 days from the date of this order. Failure to comply with the Court's directives within this order shall result in dismissal of Plaintiffs' claims.

**New Orleans, Louisiana, this 30th day of September, 2014.**

SUSIE MORGAN
UNITED STATES DISTRICT JUDGE