# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

**CENTER FOR RESTORATIVE**　　　　　　　　**CIVIL ACTION**
**BREAST SURGERY, L.L.C., ET AL.,**
　　**Plaintiffs**

**VERSUS**　　　　　　　　　　　　　　　　**NO. 11-806**

**BLUE CROSS BLUE SHIELD**　　　　　　　**SECTION: "E" (5)**
**OF LOUISIANA, ET AL.,**
　　**Defendants**

## ORDER AND REASONS

Before the Court is Defendants' Motion for Summary Judgment filed November 2, 2015.[1] For the reasons below, the motion is **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

The members of Plaintiff Center for Restorative Breast Surgery, L.L.C. ("CRBS") are surgeons who perform post-mastectomy breast reconstruction medical services.[2] Plaintiff St. Charles Surgical Hospital ("St. Charles") is a specialty surgical center where the physicians affiliated with CRBS perform the surgeries.[3] Plaintiffs are out-of-network health care providers, with respect to all Defendants, who provided services to patients covered under ERISA plans and other insurance policies issued or administered by Defendants, numerous Blue Cross Blue Shield health insurance carriers.[4]

Plaintiffs allege that, prior to performing any surgery, Plaintiffs' staff contacted each patient's insurer, notified the insurer of the procedure expected to be performed,

---

[1] R. Doc. 458.
[2] R. Doc. 308 at ¶ 83.
[3] *Id.* at ¶ 91.
[4] *Id.* at ¶ 92; R. Doc. 458-1 at 9. Each patient and his or her respective claim is identified in Exhibit I to the Fifth Amended Complaint. R. Doc. 308.

requested preauthorization to have the procedure done, and requested disclosure of the amount of benefits for the procedure and any qualification to such benefits.[5] Plaintiffs allege they received preauthorization from Defendants, through either Defendants' employees or agents.[6]

Plaintiffs filed this suit on April 6, 2010, in the Civil District Court for the Parish of Orleans, State of Louisiana.[7] Defendant Blue Cross Blue Shield of Louisiana removed the case to this Court on April 12, 2011.[8] Plaintiffs aver that each patient executed an assignment of benefits assigning to Plaintiffs benefits owed to the patient by his or her healthcare insurer, along with the authority and right to institute legal action to recover any amounts due.[9] Plaintiffs allege they performed the surgery on each patient, relying on the information provided by Defendants' employees or agents.[10] Plaintiffs maintain they did not receive the expected payment for each claim identified in Exhibit I to the Fifth Amended Complaint[11] in accordance with the representations made by Defendants.[12]

Plaintiffs bring this action in two capacities: (1) on behalf of their patients as assignees of their patients' ERISA rights, and (2) in their individual capacities to seek recovery under Louisiana state laws for claims resulting from their direct interactions with Defendants.[13] Plaintiffs filed a Fifth Amended Complaint on January 6, 2015, asserting the following counts[14]:

---

[5] R. Doc. 308 at ¶¶ 94–95.
[6] Id. at ¶¶ 94–107.
[7] R. Doc. 1-1.
[8] R. Doc. 1.
[9] R. Doc. 308 at ¶¶ 104–07.
[10] Id. at ¶ 107.
[11] The parties have provided the Court with a CD containing Exhibit I to the Fifth Amended Complaint.
[12] R. Doc. 308 at ¶¶ 107–08.
[13] Id. at ¶ 1.
[14] R. Doc. 308.

Count I:      Failure to determine benefits in accordance with the terms of ERISA plans;

Count II:     Failure to supply requested information ERISA requires to be produced;

Count III:    Failure to provide full and fair review under ERISA;

Count IV:     Breach of fiduciary duties of loyalty, disclosure, and prudence under ERISA;

Count V:      Detrimental reliance/breach of oral contract(s) under Louisiana law;

Count VI:     Breach of contract(s) under Louisiana law;

Count VII:    Negligent Misrepresentation(s) under Louisiana law; and

Count VIII:   Fraud under Louisiana law.

On June 24, 2015, the Court dismissed Counts II, III, and IV with prejudice.[15] The Court also dismissed Count VIII after Plaintiffs moved for dismissal with prejudice.[16]

On November 2, 2015, Defendants filed a motion for partial summary judgment raising the following arguments:

1. Count I: Certain of Plaintiffs' claims for ERISA benefits against certain Defendants fail as a matter of law because the Defendants are not the plan administrators and did not control benefits determinations under the plans;

2. Count I: Certain of Plaintiffs' ERISA benefits claims fail as a matter of law because they are based on insurance policies or plans that are not ERISA plans;

3. Count I: Certain of Plaintiffs' ERISA benefits claims are untimely as a matter of law pursuant to contractual limitations periods or the one-year limitations period that applies as a matter of federal common law; and

---

[15] R. Doc. 371. On November 30, 2015, Plaintiffs sought reconsideration of the order dismissing Counts II, III, and IV. R. Doc. 469. The Court denied Plaintiffs' motion for reconsideration on April 11, 2016. R. Doc. 508.
[16] R. Doc. 450.

4. Counts V, VII: Certain of Plaintiffs' negligent misrepresentation and detrimental reliance claims are barred by the one-year prescriptive period applicable to delictual claims.[17]

Plaintiffs filed a response in opposition on January 6, 2016.[18] Defendants filed a reply in support of their motion on January 19, 2016,[19] and Plaintiffs filed a surreply on January 27, 2016.[20]

## STANDARD OF LAW

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[21] "An issue is material if its resolution could affect the outcome of the action."[22] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[23] All reasonable inferences are drawn in favor of the non-moving party.[24] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party, thus entitling the moving party to judgment as a matter of law.[25]

If the dispositive issue is one on which the moving party will bear the burden of persuasion at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[26] If the

---

[17] R. Doc. 458.
[18] R. Doc. 478.
[19] R. Doc. 485.
[20] R. Doc. 489.
[21] Fed. R. Civ. P. 56. *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).
[22] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).
[23] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). *See also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).
[24] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[25] *Smith v. Amedisys, Inc.*, 298 F.3d 434, 440 (5th Cir. 2002).
[26] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263–64 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)).

moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the non-moving party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[27]

If the dispositive issue is one on which the non-moving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the non-movant's claim, or (2) affirmatively demonstrating that there is no evidence in the record to establish an essential element of the non-movant's claim.[28] "[U]nsubstantiated assertions are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. 'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[29]

## ANALYSIS

I. COUNT I: WHETHER CERTAIN OF PLAINTIFFS' CLAIMS FOR ERISA BENEFITS AGAINST CERTAIN DEFENDANTS FAIL AS A MATTER OF LAW BECAUSE THE DEFENDANTS ARE NOT THE PLAN ADMINISTRATORS AND DID NOT CONTROL BENEFITS DETERMINATIONS UNDER THE PLANS

Defendants argue that some Defendants are not proper defendants for Plaintiffs' claims for benefits under 29 U.S.C. § 1132(a)(1)(B) in Count I of the Fifth Amended

---

[27] *Celotex*, 477 U.S. at 322–24.

[28] *Id.* at 331–32 (Brennan, J., dissenting).

[29] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 324; *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) and quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).

Complaint because, under their respective plans, they were not the plan administrators and lacked discretion and control over administration and operation of the plans.[30]

The Fifth Circuit held in *LifeCare Management Services LLC v. Insurance Management Administrators Inc.* that an entity exercising "actual control" over a plan's benefits claims process can be liable under 29 U.S.C. § 1132(a)(1)(B), even if that entity is not the plan administrator: "[T]he proper party defendant in an action concerning ERISA benefits is the party that controls administration of the plan[,] and . . . [i]f an entity or person other than the named plan administrator takes on the responsibilities of the administrator, that entity may also be liable for benefits."[31] The Fifth Circuit explained, though, that "'the mere exercise of physical control or the performance of mechanical administrative tasks generally is insufficient' for liability under § 1132(a)(1)(B)."[32]

In *LifeCare*, the Fifth Circuit affirmed the district court's decision, which found that the third-party administrator could be held liable under § 1132(a)(1)(B) because the third-party administrator exercised actual control over the claims process.[33] The plan language in *LifeCare* provided that the "the services to be performed by the [third-party administrator] shall be ministerial in nature and shall be performed within the framework of policies, interpretations, rules, practices and procedures made or established by the Plan Administrator."[34] The court noted, however, that the third-party administrator "had authority to process all claims presented for benefit under the Plan" and had the discretion to determine which claims were "routine" and thus would not be referred to

---

[30] R. Doc. 458-1 at 13–17.
[31] *LifeCare Mgmt. Servs. LLC v. Ins. Mgmt. Adm'rs Inc.*, 703 F.3d 835, 844–45 (5th Cir. 2013).
[32] *Id.* (quoting *Gomez-Gonzalez v. Rural Opportunities, Inc.*, 626 F.3d 654, 665 (1st Cir. 2010)).
[33] *Id.* at 846.
[34] *Id.* at 845.

the plan administrator.[35] Based on the third-party administrator's performance of discretionary functions, the court found it exercised actual control over the claims process.[36] The Fifth Circuit explained, however, that the third-party administrator could not have been liable under § 1132(a)(1)(B) had it instead "referred all disputed claims to [the plan administrator] for resolution . . . ."[37]

Defendants argue that, under *LifeCare*, some Defendants are not the proper defendants under Count I because they were not the plan administrators of the respective plans and Plaintiffs cannot establish, and there is no evidence showing, they exercised actual control over the plans.[38] Therefore, Defendants argue, summary judgment should be granted on Count I with respect to those defendants.[39]

A.   Claims C18–C19, C879, C1320–C1322, H804–H805, H972, and H1247 against the HCSC Defendants

Defendants argue that ten of Plaintiffs' claims for ERISA benefits against the Health Care Service Corporation ("HCSC") defendants[40] fail as a matter of law: C18, C19, C879, C1320, C1321, C1322, H804, H805, H972, and H1247.[41] Defendants argue these claims are based on certain ERISA plans for which HCSC is not the plan administrator and did not control benefits determinations under the plan.[42] In its opposition, Plaintiffs stipulate that HCSC is not the proper party defendant for Count I of the Fifth Amended

---

[35] *Id.*
[36] *Id.* at 845–46.
[37] *Id.* at 846.
[38] R. Doc. 458-1 at 13–17.
[39] *Id.*; R. Doc. 485 at 2–4.
[40] The Fifth Amended Complaint names five divisions of HCSC, a mutual legal reserve company, as defendants in this matter: Blue Cross and Blue Shield of Illinois, Blue Cross and Blue Shield of Montana, Blue Cross and Blue Shield of New Mexico, Blue Cross and Blue Shield of Oklahoma, and Blue Cross and Blue Shield of Texas. R. Doc. 458-1 at 14; R. Doc. 308.
[41] R. Doc. 458-1 at 14. All references to "C" followed by a number refer to the Center tab of Exhibit I of the Fifth Amended Complaint. All references to "H" followed by a number refer to the Hospital tab of Exhibit I of the Fifth Amended Complaint.
[42] *Id.*

Complaint with respect to the ten claims Defendants identified.[43] The Court therefore grants summary judgment on Count I with regard to these claims.

B.  <u>Claims C424–C426, H382 against Wellmark</u>

Defendants argue that Wellmark, Inc. is not the proper defendant under Count I with respect to the claims regarding Patient E.D., appearing on lines C424, C425, C426, and H382 of Exhibit I to the Fifth Amended Complaint.[44] Patient E.D. is a member of a plan, sponsored by Catholic Health Initiatives, for which Wellmark is the claim administrator.[45] Defendants rely on the language of the plan to support their argument that Wellmark lacks the discretionary authority to determine claims absent review by the plan administrator, lacks actual control, and thus cannot be held liable under Count I.[46]

Defendants contend that Plaintiffs cannot establish that Wellmark had actual control, which they must prove to prevail on Count I.[47] Defendants argue that, in their motion, they "highlighted the absence of evidentiary support for . . . Wellmark . . . having 'actual control' over plan administration for certain claims. In fact, Defendants offered evidence that ***disproved*** 'actual control.'"[48] The Court disagrees. Defendants have neither affirmatively demonstrated a lack of evidence in the record to establish actual

---

[43] R. Doc. 478 at 3–4.
[44] R. Doc. 458-1 at 16.
[45] *Id. See also* R. Doc. 458-24.
[46] R. Doc. 458-1 at 16.
[47] *See id.*; *LifeCare*, 703 F.3d at 844–45 ("We find the rationale and cases holding that a [third-party administrator] may be held liable only if it exercises 'actual control' over the benefits claims process convincing. We agree that [t]he proper party defendant in an action concerning ERISA benefits is the party that controls administration of the plan' and that [i]f an entity or persaon other than the named plan administrator takes on the responsibilities of the administrator, that entity may also be liable for benefits." (internal quotation marks omitted)).
[48] R. Doc. 485 at 2 (emphasis in original).

control nor submitted affirmative evidence that negates the possibility that Wellmark had actual control.[49]

In Defendants' memorandum in support of their motion, Defendants argue, "Under the terms of E.D.'s plan, Catholic Health Initiatives has 'the exclusive right and power to interpret the Plan and to decide all matters arising under the Plan, including eligibility for Benefits.'"[50] Defendants, however, cite no support for this statement.[51] In their statement of uncontested facts, Defendants state, "Lines C424, C425, C426, and H382 present claims relating to services allegedly provided to E.D. The Plan for that patient designates an entity other than a Defendant which exercises actual control over Plan administration."[52] Defendants cite "Wellmark Attachments; Plan p. 102."[53] Defendants, however, fail to attach Page 102 of the plan to their motion.[54]

Defendants attached to their motion only two pages of the Wellmark plan, which constitute the entirety of the aforementioned "Wellmark Attachments." Those pages provide the following information regarding the process to appeal the denial of a claim:

> **STEP ONE – Appeal to the Claims Administrator**
> If your Claim has been denied in whole or in part, you may have your Claim reviewed. The Claim Administrator [Wellmark] will review its decision . . . .
>
> The Claim Administrator [Wellmark] will give you a written decision within 60 days after it receives your request for review. The receipt of Wellmark's written decision marks the end of your official appeal. If the determination is unfavorable to you, you may submit a voluntary request for review to the Catholic Health Initiatives Medical Plan Administrator, as discussed later in this section.

---

[49] *See Celotex*, 477 U.S. at 331–32 (Brennan, J., dissenting).
[50] R. Doc. 458-1 at 16.
[51] *See id.*
[52] R. Doc. 458-2 at ¶ 13.
[53] *Id.*
[54] Curiously, in Plaintiffs' statement of contested facts, Plaintiffs simply copy and paste the Defendants' statement and citation, indicating Plaintiffs agree that the plan "designates an entity other than a Defendant which exercises actual control over Plan administration." R. Doc. 478-4 at ¶ 13.

**STEP TWO – Voluntary Request for Review**

If the appealed claim is again denied, you may file a second appeal with the Claims Administrator [Wellmark]. . . .[55]

The role in the appeals process of Catholic Health Initiatives, as plan administrator, remains unclear. Although the plan states that a member "may submit a voluntary request for review" to Catholic Health Initiatives, the plan under "Step Two," labeled "Voluntary Request for Review," states that the claimant may file a second appeal with the claims administrator, which is Wellmark.[56] The language itself instructs claimants to file the second appeal with Wellmark. It is "unclear what part, if any, [Wellmark] plays in the determination of the second appeal or whether [Wellmark] merely serves as the receiving point for all appeals and forwards the second appeals to the Plan Administrator."[57] The Court finds that Defendants have not established based on plan documents, or any other competent summary judgment evidence, that Wellmark did not exercise actual control over the plan. Defendants have failed to demonstrate that no genuine issue of material fact exists as to whether Wellmark exercised actual control over the administration of the plan.[58] Summary judgment on Count I of the Fifth Amended Complaint with respect to the claims appearing on lines C424, C425, C426, and H382 is denied.

C. Claims C302–C305, H258–H259, C336–C337, H300–H303 against Regence Blue Shield

Defendants argue that Regence Blue Shield is not the proper defendant under Count I with respect to the claims regarding Patient L.C., appearing on lines C302, C303, C304, C305, H258, and H259 of Exhibit I to the Fifth Amended Complaint, and the claims

---

[55] R. Doc. 458-24 at 3.
[56] *Id.*
[57] *See Ctr. for Restorative Breast Surgery, L.L.C. v. Humana Health Ben. Plan of La., Inc.*, No. 10-4346, 2015 WL 4394034, at *12 (E.D. La. July 15, 2015).
[58] *See id.* at *11–12.

regarding a second patient with the initials L.C., appearing on lines C336, C337, H300, H301, H302, and H303 of Exhibit I.[59]

Both patients are members of plans that are sponsored by Boeing and for which Regence Blue Shield is the claim administrator.[60] Under those plans, Boeing's Board of Directors designated the Employee Benefit Plans Committee ("Committee") to be the plan administrator.[61] The plans provide as follows:

> Notwithstanding any other provision in the Plan, . . . the Plan Administrator [the Committee] has the exclusive right, power, and authority, in its sole and absolute discretion, to
>
> - Administer, apply, construe, and interpret the Plan and all related Plan documents.
>
> - Decide all matters and questions arising in connection with entitlement to benefits and the nature, type, form, amount, and duration of benefits.
>
>   . . .
>
> - Delegate its administrative duties and responsibilities to persons or entities of its choice such as the Boeing Service Center, the service representatives, and employees of the Company.
>
> All decisions that the Plan Administrator (or any duly authorized designees) makes with respect to any matter arising under the Plan and any other Plan documents are final and binding.[62]

The parties did not provide any information on the process regarding claims determinations and appeals thereof.

Based on the plan language and the limited evidence on the record, the Court cannot determine the role of Regence Blue Shield in the claims benefits process. The plan states that the plan administrator may delegate its plan administration duties or

---

[59] R. Doc. 458-1 at 16.
[60] *Id.*; R. Doc. 458-25 at 4, ¶¶ 4, 5.
[61] R. doc. 458-25 at 6.
[62] *Id.*

responsibilities to any person or entity. Thus, authority may have been delegated to Regence Blue Shield to exercise discretionary functions under the plan, such as making claims determinations or interpreting plan provisions.[63] Further, without plan documents describing the claims determination and appeals process, the Court cannot determine what role, if any, Regence Blue Shield has in making claims and benefits determinations. Defendants have failed to establish there is no genuine issue of material fact that Regence Blue Shield did not exercise actual control over the benefits claims process and administration of the plan.[64] Summary judgment on Count I of the Fifth Amended Complaint with respect to the claims appearing on lines C302, C303, C304, C305, H258, H259, C336, C337, H300, H301, H302, and H303 is denied.

### D.  Claims H374, H415, H416 against Regence Blue Shield

Defendants argue that Regence Blue Shield is not the proper defendant under Count I with respect to the claim regarding Patient T.D., appearing on line H374 of Exhibit I to the Fifth Amended Complaint, and the claims regarding a second patient with the initials T.D., appearing on lines H415 and H416 of Exhibit I.[65]

Both patients are members of plans that are sponsored by Boeing and for which Regence Blue Shield is the claim administrator.[66] Those plans contain the same language cited above in Section C of this Order with respect to Claims C302–C305, H258–H259, C336–C337, and H300–H303.[67] For the reasons stated in Section C, summary judgment on Count I of the Fifth Amended Complaint with respect to the claims appearing on lines H374, H415, and H416 is denied.

---

[63] *See LifeCare*, 703 F.3d at 845.
[64] *See Humana*, 2015 WL 4394034, at *13.
[65] R. Doc. 458-1 at 17.
[66] *Id.*; R. Doc. 458-25 at 7, ¶¶ 6, 7.
[67] R. Doc. 458-25 at 9–10.

E.  Claims C1404, H1215–H1216 against Regence BlueCross BlueShield of Utah

Defendants argue that Regence BlueCross BlueShield of Utah is not the proper defendant under Count I with respect to the claims regarding Patient M.W., appearing on lines C1404, H1215, and H1216 of Exhibit I to the Fifth Amended Complaint.[68] Patient M.W. is a member of a plan, sponsored by O.C. Tanner Company, for which Regence BlueCross BlueShield of Utah is the claim administrator.[69]

The plan provides that "[b]enefits under this Plan will be paid only if the Plan Administrator [O.C. Tanner][70] decides, in their [sic] sole discretion, that you are entitled to them."[71] With respect to claims reviews, the plan states the following:

> The first level of review will be performed by the Claims Administrator [Regence BlueCross Blue Shield of Utah] on the Plan's behalf. . . .
>
> If the Claimant does not agree with the Claims Administrator's determination from the first level review, the Claimant may submit a second level appeal in writing . . . . to: Plan Administrator [O.C. Tanner], Regence BlueCross BlueShield of Utah, 2890 East Cottonwood Parkway, Salt Lake City, UT 84121, Attn: Claims Appeals.
>
> An appeal will not be deemed submitted until it is received by the Plan Administrator [O.C. Tanner]. . . .
>
> The second level of review will be done by the Plan Administrator [O.C. Tanner]. The Plan Administrator will review the information initially received and any additional information provided by the Claimant, and make a determination on the appeal based on the terms and conditions of the Plan and other relevant information. The Plan Administrator will send a written or electronic Notice of Determination for the second level of review to the Claimant within 30 days of receipt of the appeal. The determination by the Plan Administrator upon review will be final, binding, and conclusive and will be afforded the maximum deference permitted by law.[72]

---

[68] R. Doc. 458-1 at 17.
[69] *Id.*; R. Doc. 458-25 at 13, ¶ 8.
[70] R. Doc. 458-25 at 13.
[71] *Id.*
[72] *Id.* at 14.

Defendants rely on this language to support their contention that Defendants have "highlighted the absence of evidentiary support for . . . Regence having 'actual control' over plan administration for certain claims."[73]

Another court in this district considered similar plan language in *Center for Restorative Breast Surgery, L.L.C. v. Humana Health Benefit Plan of Louisiana, Inc.*[74] In *Humana*, the relevant plan language stated that the first-level appeal would be determined by the third-party administrator but that the claimant could appeal that decision to the plan administrator.[75] The plan also stated that the first- and second-level appeals must be sent in person or by mail to the third-party administrator, and the plan provided the address of the third-party administrator.[76] The court found that, based on the plan's language, there was "a disputed material fact as to whether [the third-party administrator] exercised 'actual control' over the claims administration." The court emphasized that, "[w]hile the Plan initially states that [the third-party administrator] will resolve the initial appeal and the Plan Administrator will determine the second appeal, the Plan then instructs the claimant to send *both* appeals to [the third-party administrator]."[77] The court concluded it was "unclear what part, if any, [the third-party administrator] plays in the determination of the second appeal or whether [the third-party administrator] merely serves as the receiving point for all appeals and forwards the second appeals to the Plan Administrator."[78]

---

[73] R. Doc. 485 at 2.
[74] *Humana*, 2015 WL 4394034, at *12–13.
[75] *Id.* at *11.
[76] *Id.*
[77] *Id.* at *12 (emphasis in original).
[78] *Id.*

Similarly, although the Regence BlueCross BlueShield of Utah plan states "[t]he second level of review will be done by the Plan Administrator,"[79] it instructs claimants to mail the second-level appeal to Regence BlueCross BlueShield of Utah and not to O.C. Tanner. Based on the plan language, the Court finds a disputed material fact exists as to whether Regence BlueCross BlueShield of Utah exercises actual control over the claims administration. As in *Humana*, it is unclear what role, if any, Regence BlueCross BlueShield of Utah "plays in the determination of the second appeal or whether [it] merely serves as the receiving point for all appeals and forwards the second appeals to the Plan Administrator."[80] The Court finds this disputed factual issue is material.[81] "If [Regence BlueCross BlueShield of Utah] handles both levels of appeals or selectively decides which appeals go to the Plan Administrator, this exercise of discretion would signify actual control, and [Regence BlueCross BlueShield of Utah] would be a proper defendant under *Lifecare*."[82] The Court finds the plan's conflicting language creates a genuine issue of material fact. Accordingly, summary judgment on Count I of the Fifth Amended Complaint with respect to the claims appearing on lines C1404, H1215, and H1216 is denied.

II.   COUNT I: WHETHER SOME OF PLAINTIFFS' ERISA BENEFITS CLAIMS FAIL AS A MATTER OF LAW BECAUSE THEY ARE BASED ON INSURANCE POLICIES OR PLANS THAT ARE NOT SUBJECT TO ERISA

Defendants argue that several patients' plans from which Plaintiffs' claims arise are not governed by ERISA and, accordingly, Count I of the Fifth Amended Complaint should be dismissed as to the claims arising from those plans.[83]

---

[79] R. Doc. 458-25 at 14.
[80] *Humana*, 2015 WL 4394034, at *12.
[81] *See id.*
[82] *Id.*
[83] R. Doc. 458-1 at 17–19.

The parties subsequently filed a joint stipulation identifying multiple claims that are based on plans not subject to ERISA[84]:

| Patient | Line(s) |
|---------|---------|
| J.B. | C112, C113 |
| B.H. | H624 |
| J.A. | C10, H50 |
| V.B. | C176 |
| M.B. | C186, C187 |
| L.B. | C237, C238 |
| B.B. | H225 |
| T.C. | C334, C335, H294 |
| J.C. | H339 |
| S.D. | H344 |
| I.D. | H350, H351, H352 |
| E.D. | H356 |
| L.D. | H360 |
| C.D. | H376, H377 |
| S.F. | C476, C477, H456 |
| J.F. | H488 |
| K.G. | H519 |
| T.H. | H621 |
| M.H. | H638 |
| D.H. | C687, C688, C689, C690, H643 |
| Z.I. | C703 |
| J.M. | C818 |
| D.M. | H779 |
| C.P. | C956, C957, C958, C959, C960, C961, H872, H873 |

---

[84] R. Doc. 468.

| M.R. | H934 |
|------|------|
| J.R. | H935, H936 |
| J.R. | H945, H946 |
| T.R. | H950 |
| J.R. | H976 |
| T.S. | H1037 |
| B.S. | H1038, H1039 |
| D.S. | H1070 |
| C.S. | H1083 |
| C.T. | H1104 |
| R.H. | H612 |
| J.R. | H979, H980 |
| M.H. | C663, C664, C665, C666, H605, H606 |
| A.L. | C735, H683 |
| B.A. | C42, C43, C44, H35 |
| M.R. | C1046, H927 |
| B.W. | C1419, C1420, C1421, H1248, H1249 |
| C.F. | H457, H458 |
| H.K. | C719, H665, H666 |
| J.P. | H874 |
| T.F. | C528, C529, H497 |
| C.C. | C313, C314, C415, H269, H270 |
| J.B. | H221 |
| K.H. | C668, C669, H608 |
| L.R. | C1091 |
| L.Z. | C1448, C1449, C1450, C1451 |
| K.A. | H52, H53, H54 |

Accordingly, the Court grants summary judgment on Count I as to the claims listed above, as ERISA does not apply to them.

The parties also stipulated that the following two claims do arise from ERISA plans:

| Patient | Line(s) |
|---------|---------|
| S.C. | C272, C273, C274, H230 |
| D.G. | H512 |

Accordingly, the Court denies summary judgment on Count I as to these two claims.

III.   COUNT I: WHETHER SOME OF PLAINTIFFS' ERISA BENEFITS CLAIMS ARE UNTIMELY AS A MATTER OF LAW

Defendants contend that the Court should grant summary judgment on certain of Plaintiffs' claims for benefits under ERISA in Count I of the Fifth Amended Complaint.[85] Defendants argue those claims are barred (1) by the applicable statutory limitations period, for those claims arising under plans that lack a contractual limitations period, or (2) by the limitations period contained in the plans on which they are based.[86]

A.   Whether Certain of Plaintiffs' ERISA Claims Fail Because They Are Barred by the One-Year Statute of Limitations Applicable to ERISA Claims Based on Plans that Lack a Contractual Limitations Period

Defendants argue that certain of Plaintiffs' ERISA claims for benefits arising under plans not containing contractual limitations periods are untimely.[87]

A statute of limitations establishes the period of time within which a claimant must bring an action.[88] "As a general matter, a statute of limitations begins to run when the

---

[85] R. Doc. 458-1 at 20.
[86] *Id.* at 21–27.
[87] R. Doc. 458-1 at 24–27.
[88] *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 134 S. Ct. 604, 610 (2013).

cause of action accrues—that is, when the plaintiff can file suit and obtain relief."[89] ERISA does not specify a statute of limitations for claims brought under § 1132(a)(1)(B).[90] Nevertheless, a cause of action under ERISA "accrues after a claim for benefits has been made and formally denied."[91] Because ERISA provides no specific limitations period, courts apply the statute of limitations of the state-law cause of action "most analogous" to the cause of action raised.[92]

The parties agree that the statute of limitations for the cause of action under Louisiana law most analogous to Plaintiffs' claims for benefits under the ERISA health plans is contained in La. Rev. Stat. § 22:975(A)(11), which governs health and accident policy provisions.[93] La. Rev. Stat. § 22:975(A)(11) provides, "No legal action shall be brought after the expiration of one year after the time proof of loss is required to be filed." The Court agrees that La. Rev. Stat. § 22:975(A)(11) provides the limitations period for the most analogous cause of action under state law. Therefore, the applicable limitations period for those ERISA plans that do not contain contractual limitations periods is one year.

The parties disagree as to when prescription commences. The parties devote several pages of argument to defining "loss" as used in La. Rev. Stat. § 22:975(A)(11).[94] The Court need not, however, determine when "loss" occurs under Louisiana law. "Although state law determines the limitations period, federal law governs the accrual

---

[89] *Id.*

[90] *Id.*; *Hogan v. Kraft Foods*, 969 F.2d 142, 145 (5th Cir. 1992).

[91] *Harris Methodist Fort Worth v. Sales Support Servs. Inc. Employee Health Care Plan*, 426 F.3d 330, 337 (5th Cir. 2005). *See also Hall v. Nat'l Gypsum Co.*, 105 F.3d 225, 230 (5th Cir. 1997).

[92] *Harris*, 426 F.3d at 337; *N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 204 (5th Cir. 2015).

[93] R. Doc. 458-1 at 25; R. Doc. 478 at 8–11.

[94] *See* R. Doc. 458-1 at 26 – 27; R. Doc. 478 at 8–10; R. Doc. 485 at 11–14; R. Doc. 489 at 4–6.

date for a claim under ERISA."[95] A cause of action under ERISA "accrues after a claim for benefits has been made and formally denied."[96] Therefore, to determine when the limitations period commenced, the Court must determine when the claims for benefits were "formally denied."

The Supreme Court in *Heimeshoff v. Hartford Life & Accident Insurance Co.* explained that a cause of action under ERISA does not accrue until a claimant has exhausted the internal appeals process:

> ERISA and its regulations require plans to provide certain presuit procedures for reviewing claims after participants submit proof of loss (internal review). The courts of appeals have uniformly required that participants exhaust internal review before bringing a claim for judicial review under [§ 1132(a)(1)(B)]. A participant's cause of action under ERISA accordingly does not accrue until the plan issues a final denial.[97]

The Fifth Circuit has also recognized that "claimants seeking benefits from an ERISA plan must first exhaust available administrative remedies under the plan before bringing suit to recover benefits."[98]

Accordingly, Plaintiffs' cause of action under ERISA with respect to plans lacking a contractual limitations period began to accrue with respect to each claim when the applicable plan issued a final denial at the conclusion of the internal review process. The Court finds, per *Heimeshoff* and *Harris*, that the one-year prescriptive period for each claim for benefits under § 1132(a)(1)(B), borrowed from La. Rev. Stat. § 22:975(A)(11),

---

[95] *Ivanovic v. IBM Pers. Pension Plan*, 47 F. Supp. 3d 163, 167 (E.D.N.Y. 2014), *aff'd*, 620 F. App'x 64 (2d Cir. 2015). *See also Jensen v. Snellings*, 841 F.2d 600, 606 (5th Cir. 1988) ("Although we borrow the applicable limitations period from state law, the determination of when that limitations period begins to run is governed by federal law."); *Salcedo v. John Hancock Mut. Life Ins. Co.*, 38 F. Supp. 2d 37, 42 (D. Mass. 1998) ("Although the limitations period in an action to recover benefits under ERISA is borrowed from state law, federal law determines the date on which the cause of action accrues and from which the limitations period is measured.").

[96] *Harris*, 426 F.3d at 337. *See also Hall*, 105 F.3d at 230 ("A cause of action under ERISA accrues when a request for benefits is denied.").

[97] *Heimeshoff*, 134 S. Ct. at 610.

[98] *Bourgeois v. Pension Plan for Employees of Santa Fe Int'l Corps.*, 215 F.3d 475, 479 (5th Cir. 2000).

commenced when the applicable plan issued a final denial following exhaustion of the plan's internal review process. Summary judgment on Count I is granted as to any claims for benefits under § 1132(a)(1)(B) arising from a plan lacking a contractual limitations period that was filed more than one year from the date on which the applicable plan issued a final denial.

B.   Whether Certain of Plaintiffs' ERISA Benefits Claims, Based on ERISA Plans that Include a Contractual Limitations Period, Are Barred

Defendants argue that certain of Plaintiffs' claims for benefits under ERISA § 1132(a)(1)(B) fail as a matter of law because Plaintiffs failed to bring those claims within the contractual limitations periods contained in the plans under which the claims arise.[99]

As previously explained, a cause of action under ERISA "accrues after a claim for benefits has been made and formally denied."[100] Because ERISA provides no specific limitations period, courts apply state law principles of limitation.[101] "Where a plan designates a reasonable, shorter time period, however, that lesser limitations schedule governs."[102]

In *Heimeshoff*, the Supreme Court explained that a plan participant's cause of action under ERISA "does not accrue until the plan issues a final denial."[103] The Court held, however, that, "[a]bsent a controlling statute to the contrary, a participant and a plan may agree by contract to a particular limitations period, even one that starts to run before the cause of action accrues, as long as the period is reasonable."[104] The Court noted that statutes of limitations "provide only a default rule that permits parties to choose a

---

[99] R. Doc. 458-1 at 21.
[100] *Harris*, 426 F.3d at 337. *See also Hall*, 105 F.3d at 230.
[101] *Harris*, 426 F.3d at 337.
[102] *Id.*
[103] *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 134 S. Ct. 604, 610 (2013).
[104] *Id.*

shorter limitations period,"[105] and the Court reasoned, "[i]f parties are permitted to contract around a default statute of limitations, it follows that the same rule applies where the statute creating the cause of action is silent regarding a limitations period."[106] "The principle that contractual limitations provisions ordinarily should be enforced as written is especially appropriate when enforcing an ERISA plan" because "[t]he plan, in short, is at the center of ERISA."[107] The Court therefore concluded that it must give effect to the plan's limitations provision unless the Court determines either that the period is unreasonably short or that a "controlling statute" prevents the limitations provision from taking effect.[108]

Plaintiffs do not identify, and the Court has not found, any controlling statute that prevents a contractual limitations period from taking effect in this case. Indeed, Louisiana permits parties to reduce a prescriptive period by contract.[109] Therefore, the Court need only determine whether the contractual limitations periods at issue are "unreasonably short."[110]

Plaintiffs argue that "Fifth Circuit precedence [sic] clearly bars any contractual limitations period that is shorter than [the one-year period] prescribed by relevant statute."[111] This, however, is clearly contrary to *Heimeshoff*. To support their argument, Plaintiffs cite only one case, *Armel v. Sun Life Assurance Company of Canada*, a 2006 district court case that predated *Heimeshoff*.[112] In *Armel*, the court deemed La. Rev. Stat.

---

[105] *Id.*
[106] *Id.*
[107] *Id.* at 611–12.
[108] *Id.* at 612.
[109] *See* Saul Litvinoff, 6 La. Civ. L. Treatise, Law of Obligations § 11.22 (2d ed.) ("Louisiana courts have quite often asserted that parties may agree to a prescriptive period shorter than the one provided by law."); *Barrilleaux v. Hartford Life and Acc. Ins. Co.*, No. 12-1542, 2014 WL 3778696 (E.D. La. July 29, 2014).
[110] *Heimeshoff*, 134 S. Ct. at 612.
[111] R. Doc. 478 at 8.
[112] *Armel v. Sun Life Assur. Co. of Canada*, No. 05-0327, 2006 WL 980679, at *3 (E.D. La. Apr. 11, 2006).

§ 22:213(A)(11), which contained a one-year prescriptive period, analogous to a cause of action seeking benefits under ERISA.[113] The contractual limitations period at issue in *Armel*, however, was three years.[114] The court applied the contractual limitations period and explained that "when an insurance policy specifies a contractual period, which is more favorable to the insured than the one-year prescriptive period, the time for filing is governed by the time period specified in the policy."[115] The *Armel* court did not address the issue of whether a contractual limitations period may shorten the prescriptive period provided by statute. Clearly under *Heimeshoff* and its progeny, a contractual limitations period may shorten the default limitations period, absent a controlling statute to the contrary, unless the contractual limitations period is unreasonably short.[116]

The Court in *Heimeshoff* did not define "unreasonably short." The Court provided some guidance, however, when it found that the three-year contractual limitations period at issue in that case was not unreasonably short on its face,[117] even though the limitations period began when proof of loss was due, which was before a participant could exhaust internal review under the plan.[118] The Court explained as follows:

> Neither Heimeshoff nor the United States claims that the Plan's 3-year limitations provision is unreasonably short on its face. And with good reason: the United States acknowledges that the regulations governing internal review mean for "mainstream" claims to be resolved in about one year, leaving the participant with two years to file suit. Even in this case, where the administrative review process required more time than usual, Heimeshoff was left with approximately one year in which to file suit.[119]

---

[113] *Id.* at 2−3.
[114] *Id.* at *3.
[115] *Id.*
[116] *Heimeshoff*, 134 S. Ct. at 612 ("We must give effect to the Plan's limitations provision unless we determine either that the period is unreasonably short, or that a "controlling statute" prevents the limitations provision from taking effect.").
[117] *See id.* at 612−13.
[118] *Id.* at 610.
[119] *Id.* at 612 (citations omitted).

This suggests that a limitations period that provides a claimant one year to file suit from the date of exhaustion of the internal appeals is not unreasonably short, a finding that is consistent with application of the statutory limitations period borrowed from La. Rev. Stat. § 22:975(A)(11) to plans that do not contain a contractual limitations period.[120]

In *Baptist Memorial Hospital—De SoTo Inc. v. Crain Automotive Inc.*, the plan at issue contained a limitations period that provided, "No action at law or in equity . . . shall be brought after the expiration of two (2) years from the date the expense was incurred, or one (1) year from the date a completed claim was filed, whichever occurs first."[121] The court found that the completed claim was filed on November 13, 2003.[122] The lawsuit was filed on August 25, 2005, well outside the plan's applicable one-year limitations period.[123] The trial court, however, found that the contractual limitations period of one year was "unreasonable" and thus unenforceable.[124]

The Fifth Circuit affirmed, concluding the one-year limitations period was unreasonable:

> First, the one-year limitations period begins to run when a participant merely files a completed claim, potentially long before the claimant's ERISA cause of action even accrues. The administrator's initial denial of a claim could take as long as 90 days under the . . . Plan, depending on whether the administrator requests that the claimant submit additional information. The claimant then has an additional 180 days to administratively appeal the denial of a claim, and the administrator then has 60 days to issue a decision on the appeal. In total, the . . . Plan's claim and internal appeal procedures could take as long as 330 days, leaving an unsatisfied claimant with only 35 days to file suit.[125]

---

[120] *See supra* Part III.A.

[121] *Baptist Mem'l Hosp.—DeSoto Inc. v. Crain Auto. Inc.*, 392 F. App'x 288, 294 (5th Cir. 2010) (per curiam). Although this case predated *Heimeshoff*, the court was following *Harris*, in which the Fifth Circuit held that, "[w]here a plan designates a reasonable, shorter time period [than provided by an applicable state law], that lesser limitations schedule governs." *Harris*, 426 F.3d at 337.

[122] *Id.*

[123] *Id.*

[124] *Id.*

[125] *Id.* at 294–95.

In *Baptist*, the plan administrator failed to provide the claimant with a formal denial, and the court found that the plaintiff's ERISA cause of action had not accrued by October 13, 2004, less than one year before the plaintiff filed suit.[126]

In *Dye v. Associates First Capital Corporation Long-Term Disability Plan 504*, the Fifth Circuit found that a 120-day limitation period in the context of disability benefits was not unreasonable.[127] The court explained that "there is no apparent reason that a court should treat a limitations period [in the health care context] differently" in the context of disability benefits.[128]

Of course, a contractual limitations period that expires before the issuance of a final denial of benefits is unreasonable.[129] Because "claimants seeking benefits from an ERISA plan must first exhaust available administrative remedies under the plan before bringing suit to recover benefits,"[130] any period that expires before a claimant has exhausted the available internal remedies is unreasonably short.[131] "If the administrator's conduct causes a participant to miss the deadline for judicial review, waiver or estoppel may prevent the administrator from invoking the limitations provision as a defense."[132] For example, in *Hansen v. Aetna Health and Life Ins. Co.*, the United States District Court for the District of Oregon found that a two-year limitations period was unreasonable when

---

[126] *Id.* at 295.

[127] *Dye v. Associates First Capital Corp. Long-Term Disability Plan 504*, 243 F. App'x 808, 810 (5th Cir. 2007).

[128] *Id.*

[129] *See Baptist*, 392 F. App'x at 294–95 (implying that a contractual limitations period that, as applied, provides a claimant only 35 days to file suit is unreasonable).

[130] *Bourgeois*, 215 F.3d at 479.

[131] *See, e.g., Heimeshoff*, 134 S. Ct. at 615 ("If the administrator's conduct causes a participant to miss the deadline for judicial review, waiver or estoppel may prevent the administrator from invoking the limitations provision as a defense."); *Baptist*, 392 F. App'x at 294 (suggesting that a plan with a one-year limitations period is unreasonable when the limitations period is mostly consumed by the internal review process and leaves the claimant with only 35 days to file suit).

[132] *Heimeshoff*, 134 S. Ct. at 615.

a protracted internal review process had "consumed that entire period."[133] The court explained, "Enforcement of a two-year suit limitation in this case, after plaintiff has diligently pursued her appeals rights in a protracted internal review process, would render that provision unreasonable in practical terms."[134]

In Plaintiffs' supplemental statement of contested facts, Plaintiffs identify at least one claim that prescribed under the contractual limitations period contained in the respective plan before the plan administrator issued a final appeal.[135] Therefore, with respect to that claim, Plaintiffs have shown that the contractual limitations period as applied was unreasonably short, as Plaintiffs' claims prescribed before Plaintiffs could even file suit. Any contractual limitations period that expired before the issuance of a final denial of benefits is unenforceable.

Further, after reviewing the applicable case law and the arguments of the parties, the Court finds that a contractual limitations period that results in the claimant's having at least 90 days to file suit from the date the plan issues a decision on final appeal[136] is presumptively reasonable.[137] Claimants who fail to bring actions within the contractual limitations period may nevertheless rebut the presumption of reasonableness by showing

---

[133] *Hansen v. Aetna Health & Life Ins. Co.*, No. 98-949, 1999 WL 1074078, at *4 (D. Or. Nov. 4, 1999).

[134] *Id.*

[135] *See* R. Doc. 514 at ¶ 116.

[136] The Court must consider the amount of time a claimant has to file suit to determine whether a contractual limitations period is reasonable. *See Heimeshoff*, 134 S. Ct. at 612–13. Because "claimants seeking benefits from an ERISA plan must first exhaust available administrative remedies under the plan before bringing suit to recover benefits," *Bourgeois*, 215 F.3d at 479, the Court determines whether a period is reasonable based on the time a claimant has to file suit from the date the plan issues a decision on the final internal appeal.

[137] Indeed, Plaintiffs concede that a 90-day limitations period is not unreasonably short with respect to the ERISA plan applicable to Claim C1395. *See* R. Doc. 458-2 at ¶ 76; R. Doc. 514 at ¶ 76.

they are entitled to application of traditional doctrines such as waiver, estoppel, or equitable tolling.[138]

Plaintiffs have offered no evidence to rebut the presumption that 90 days is reasonable with respect to any particular claim. Nor have Plaintiffs provided any evidence to establish that waiver, estoppel, or equitable tolling should apply to any particular claim.[139]   Despite the Court's having granted Plaintiffs leave to supplement their opposition to the motion for summary judgment,[140] Plaintiffs provided no competent summary judgment evidence to support their contention that various contractual limitations periods are unreasonable as applied. For example, with respect to Paragraph 81, which corresponds to Claim C-943, Plaintiffs and Defendants agree that the plan provided claimants 180 days to file suit "after the claimant has exhausted the claims and appeal procedures under the Plan."[141] The parties also agree that the limitations period

---

[138] *See Heimeshoff*, 134 S. Ct. at 615 ("[E]ven in the rare cases where internal review prevents participants from bringing [§ 1132(a)(1)(B)] actions within the contractual period, courts are well equipped to apply traditional doctrines that may nevertheless allow participants to proceed. If the administrator's conduct causes a participant to miss the deadline for judicial review, waiver or estoppel may prevent the administrator from invoking the limitations provision as a defense. . . . To the extent the participant has diligently pursued both internal review and judicial review but was prevented from filing suit by extraordinary circumstances, equitable tolling may apply." (citations omitted)).

[139] *See Heimeshoff*, 134 S. Ct. at 611–12 ("The principle that contractual limitations provisions ordinarily should be enforced as written is especially appropriate when enforcing an ERISA plan. The plan, in short, is at the center of ERISA. . . . We must give effect to the Plan's limitations provision unless we determine either that the period is unreasonably short, or that a 'controlling statute' prevents the limitations provisions from taking effect."); *Munro-Kienstra v. Carpenters' Health & Welfare Trust Fund of St. Louis*, 790 F.3d 799, 802–03 (8th Cir. 2015)  (not reaching whether contractual limitations period was reasonable because "[the plaintiff] does not argue that the plan's two year statute of limitations is unreasonable under *Heimeshoff* . . . ." (quoting *Heimeshoff*, 134 S. Ct. at 612, 616)); *Mazur v. UNUM Ins. Co.*, 590 F. App'x 518, 522 (6th Cir. 2014) ("We apply the limitations periods specified in the policy because they apply to [the plaintiff's] ERISA claims, and because [*the plaintiff*] has not argued that these limitations are unreasonable."); *Owner-Operator Indep. Drivers Ass'n, Inc. v. Mayflower Transit, Inc.*, No. 98-457, 2007 WL 2900561, at *11 (S.D. Ind. Sept. 28, 2007) (non-ERISA) ("Plaintiffs have not demonstrated that one- or two-year contractual limitations periods are unreasonably short. . . . Plaintiffs have provided no evidence to distinguish these cases or otherwise bolster their assertion that such time limits are unreasonable; their argument on this ground cannot succeed.").

[140] *See* R. Doc. 512 at 4; R. Doc. 514.

[141] R. Doc. 458-2 at ¶ 81; R. Doc. 514 at ¶ 81.

began to run on May 2, 2013, the date of resolution of Plaintiffs' second-level appeal.[142]

Thus, Plaintiffs had until October 29, 2013, to file suit. Plaintiffs did not file suit on Claim

C-943, however, until November 15, 2013.[143] In their supplemental statement of

contested facts, Plaintiffs argument provides only as follows: "Plaintiffs assert that a 180-

day prescriptive period is unreasonable under these circumstances. Plaintiffs further

assert that suit for this claim was filed within a reasonable time."[144] This, however, is

insufficient to defeat summary judgment, as "unsubstantiated assertions are not

competent summary judgment evidence."[145] "The party opposing summary judgment is

required to identify specific evidence in the record and to articulate the precise manner

in which that evidence supports his or her claim,"[146] but in this case Plaintiffs assert only

conclusory allegations in support of their argument that the plans' contractual limitations

periods are unreasonable.[147] Because Plaintiffs have failed to show that these contractual

limitations periods are unreasonably short or otherwise unenforceable,[148] the Court will

enforce the contractual limitations period contained in those plans.[149]

The Court further finds that a limitations period resulting in the claimant's having

fewer than 90 days to file suit from the date of final appeal is unreasonably short on its

face, as it would impose an unreasonable burden on the claimant.

---

[142] R. Doc. 458-2 at ¶ 81; R. Doc. 514 at ¶ 81.

[143] R. Doc. 458-2 at ¶ 81; R. Doc. 514 at ¶ 81.

[144] R. Doc. 514 at ¶ 81.

[145] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[146] *Id.*

[147] *See generally* R. Doc. 514.

[148] With respect to many claims, Plaintiffs concede that the plans under which the claims arise contained contractual limitations periods that are "reasonable under [the] circumstances." *See* R. Doc. 514. The Court will enforce the contractual limitations periods in those plans as written.

[149] *See Heimeshoff*, 134 S. Ct. at 611–12 ("The principle that contractual limitations provisions ordinarily should be enforced as written is especially appropriate when enforcing an ERISA plan. The plan, in short, is at the center of ERISA. . . . We must give effect to the Plan's limitations provision unless we determine either that the period is unreasonably short, or that a 'controlling statute' prevents the limitations provisions from taking effect.").

"Reasonableness . . . [turns] on a determination of whether the contractual limitations period gives the claimant a chance to investigate the claim and exhaust administrative remedies before the time limitation has run, and whether it gives the plan administrator appropriate protection from stale claims."[150] A period of at least 90 days to file suit from the date on which the plan issues a decision on final appeal strikes the appropriate balance between ensuring a claimant has sufficient time to investigate his or her claim and file suit and protecting the plan administrator from stale claims.

In summary, with respect to any plan that allows the claimant fewer than 90 days to file suit from the date the plan issued the final appeal, the limitations period is unreasonably short on its face. For those plans, the one-year limitations period borrowed from La. Rev. Stat. § 22:975(A)(11) applies. The Court grants summary judgment on Count I with respect to any claims not filed within one year from the date such a plan issued a final decision on appeal.[151]

With respect to any plan that allows a claimant at least 90 days to file suit from the date the plan issue the final appeal, the limitations period is not unreasonably short on its face, and, because there is no particularized evidence showing extraordinary circumstances with respect to any claim, the limitations period is enforceable. For those claims arising under plans with enforceable limitations periods, the Court grants summary judgment on Count I with respect to any claim not filed within the limitations period provided by the plan under which the claim arose.

---

[150] *Furleigh v. Allied Grp. Inc.*, 281 F. Supp. 2d 952, 969 (N.D. Iowa 2003).
[151] *Harris*, 426 F.3d at 337; *Munro-Kienstra*, 790 F.3d at 802–03 (8th Cir. 2015) ("If the parties 'have adopted a limitations period by contract,' as the parties have done here, 'there is no need to borrow a state statute of limitations' unless a court concludes 'either that the period is unreasonably short, or that a controlling statute prevents the limitations provision from taking effect.'" (quoting *Heimeshoff*, 134 S. Ct. at 612, 616)).

IV.   Count VII: Whether Some of Plaintiffs' Negligent Misrepresentation have Prescribed

Defendants argue that some of Plaintiffs' negligent misrepresentation claims in Count VII of the Fifth Amended Complaint have prescribed.[152] The parties agree,[153] and the Court concurs, that negligent misrepresentation is a tort claim[154] and is subject to a one-year prescriptive period under Louisiana law.[155] The parties dispute, however, when a negligent misrepresentation cause of action begins to accrue.

Under Louisiana law, prescription commences when a plaintiff has actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort.[156] "Constructive knowledge is whatever notice is enough to excite attention and put the injured party on guard and call for inquiry. Such notice is tantamount to knowledge or notice of everything to which a reasonable inquiry may lead."[157]

Defendants argue that the prescriptive period on Plaintiffs' negligent misrepresentation claims began, at the latest, on the date Plaintiffs filed their first internal appeals.[158] Defendants contend that when Plaintiffs filed their first appeal, "they had

---

[152] R. Doc. 458-1 at 28–33.

[153] *See id.* at 28; R. Doc. 478 at 11.

[154] *Lifecare Hospitals, Inc. v. B & W Quality Growers, Inc.*, 39,065 (La. App. 2 Cir. 2004), 887 So. 2d 624, 633 *writ denied*, 2004-2935 (La. 2005), 893 So. 2d 872 (citing *Memorial Hospital Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236 (5th Cir. 1990)).

[155] *See Nat'l Council on Compensation Ins v. Quixx Temporary Servs., Inc.*, 665 So. 2d 120, 122 (La. App. 4 Cir. 1995) ("The action for negligent misrepresentation arises *ex delicto*, . . . and is subject to the one year prescriptive period of Civil Code article 3492.").

[156] *Campo v. Correa*, 2001-2707 (La. 6/21/02), 828 So. 2d 502, 510. *See also Dardar*, 2011 WL 976539, at *2; *Dugger v. Upledger Inst.*, No. CIV. A. 90-0829, 1992 WL 210046, at *1 (E.D. La. Aug. 21, 1992), *aff'd sub nom. Dugger v. Upledger Inst.*, 8 F.3d 20 (5th Cir. 1993) ("In a suit for negligent misrepresentation, prescription does not run against one who is ignorant of the facts upon which his cause of action is based, as long as such ignorance is not willful, negligent, or unreasonable. Therefore, prescription does not commence until the plaintiff has actual or constructive notice of the tortious act, the resulting damage and the causal connection between the two." (internal citation and quotation marks omitted)).

[157] *Campo*, 828 So. 2d at 510–11.

[158] R. Doc. 458-1 at 30–31.

actual knowledge of the facts they needed to bring their negligent misrepresentation . . . claims and that prescription had begun to run."[159]

Plaintiffs, on the other hand, argue that the prescriptive period commenced on the date Plaintiffs exhausted their internal appellate rights.[160] To support their argument, Plaintiffs rely on *Armel v. Sun Life Assur. Co. of Canada*, but this case is distinguishable because it involved the determination of benefits under an ERISA plan and not under Louisiana law.[161]

In *Harvey v. Dixie Graphics, Inc.*, the Supreme Court of Louisiana explained that a cause of action in tort begins to accrue "when the plaintiff's right to be free of illegal damage has been violated."[162] The damage suffered must be actual, determinable, and not merely speculative, but "there is no requirement that the quantum of damages be certain or that they be fully incurred, or incurred in some particular quantum, before the plaintiff has a right of action."[163] In *Harvey*, the plaintiff sued an accounting firm for alleged negligence in preparing income tax returns for the plaintiff's company.[164] The plaintiff learned in November 1984 that his tax returns were prepared incorrectly, and in December 1986, after negotiating with the IRS, the plaintiff paid the IRS more than $175,000 tax and interest.[165] The plaintiff sued the accounting firm in June 1987.[166] The Louisiana Supreme Court affirmed the trial court's ruling that the plaintiffs' negligence claim had prescribed.[167] The court found that it was not manifestly erroneous to conclude

---

[159] *Id.* at 31.
[160] R. Doc. 478 at 13–14.
[161] *Armel v. Sun Life Assur. Co. of Canada*, 2006 WL 980679 (E.D. La. Apr. 11, 2006).
[162] *Harvey v. Dixie Graphics, Inc.*, 593 So. 2d 351, 354 (La. 1992).
[163] *Id.*
[164] *Id.* at 353.
[165] *Id.*
[166] *Id.*
[167] *Id.* at 354–55.

that prescription on the plaintiff's tort claim commenced in November 1984—as opposed to December 1986—because the plaintiff knew of the accounting firm's negligence at that time.[168] The court explained, "The mere fact that all of [the plaintiff's] damages were not yet suffered because he had not yet written a check to the IRS does not change the key fact that the plaintiff was certainly aware that he had suffered appreciable harm from the allegedly tortious act of [the defendant]."[169]

To prevail in an action for negligent misrepresentation, a plaintiff must prove that the defendant had a legal duty to supply correct information, the defendant breached that duty, and the breach of that duty caused the plaintiff damages.[170] Plaintiffs allege that Defendants had a duty "to act in good faith and provide up-to-date information regarding [their] plan[s] through [their] agent[s] to third parties who rely on that information in making their admission and patient treatment decisions."[171] Plaintiffs allege that Defendants breached their duty to Plaintiffs "by providing misleading information about the benefits to be paid after authorizing the procedure to be performed."[172] Plaintiffs argue these alleged misrepresentations caused them to sustain damages including loss of revenue for services rendered to the subscribers, loss of profits, loss of business opportunities, and costs of services of rendering care and treatment to the subscribers.[173]

---

[168] *Id.*

[169] *Id.*at 355.

[170] *Hardy v. Easy T.V. & Appliances of Louisiana, Inc.*, 2001-0025 (La. App. 4 Cir. 12/12/01), 804 So. 2d 777, 781.

[171] R. Doc. 308 at ¶ 235 (citing *B & W Quality Growers*, 887 So. 2d at 632 ("We further conclude that [the defendant] was under a duty to act in good faith and provide up-to-date information regarding its plan to reduce coverage through its agent to third parties such as [the plaintiff], who rely on that information in making their admission and patient treatment decisions.")).

[172] R. Doc. 408 at ¶ 236.

[173] *Id.* at ¶ 241.

Plaintiffs state in their complaint that, "after the benefits were not paid in accordance with the representations," they appealed the benefit determinations.[174] By the date of the first appeal, Plaintiffs clearly knew that they had received less than the amount Defendants allegedly represented that Plaintiffs would receive for the services rendered. As a result, Plaintiffs knew they had "suffered appreciable harm" from the alleged negligent misrepresentation by the date they filed their first appeals.[175] The Court finds that prescription commenced, at the latest, when the first appeal was filed with respect to each claim. Accordingly, any claim under Count VII that was filed more than one year after the date the first appeal was filed with respect to such claim is prescribed, and summary judgment is granted on Count VII as to each prescribed claim.

V.    COUNT V: WHETHER SOME OF PLAINTIFFS' DETRIMENTAL RELIANCE CLAIMS HAVE PRESCRIBED

Defendants argue that certain of Plaintiffs' detrimental reliance claims in Count V of the Fifth Amended Complaint have prescribed.[176] The parties dispute the applicable prescriptive period for Plaintiffs' cause of action for detrimental reliance. While Defendants argue Plaintiffs' cause of action for detrimental reliance is delictual and is subject to a one-year prescriptive period, Plaintiffs contend that their detrimental reliance cause of action sounds in contract and is subject to a ten-year prescriptive period.[177]

A claim for detrimental reliance can sound in either contract or tort.[178] Delictual actions are subject to a prescriptive period of one year, while contractual actions are

---

[174] *Id.* at ¶ 108–09.

[175] *Harvey*, 593 So. 2d 355.

[176] R. Doc. 458-1 at 28–33.

[177] *See* R. Doc. 458-1 at 28–30; R. Doc. 478 at 12–13.

[178] *Keenan v. Donaldson, Lufkin & Jenrette, Inc.*, 575 F.3d 483, 487 (5th Cir. 2009); *Copeland v. Wasserstein, Perella & Co.*, 278 F.3d 472, 479 (5th Cir. 2002).

subject to a ten-year prescriptive period.[179] "The prescriptive period is not determined by the label of the cause of action but by the nature of the transaction and the underlying basis of the claim."[180] "The classical distinction between contractual and delictual damages is that the former flow from an obligation contractually assumed by the obligor, whereas the latter flow from a violation of general duty owed by all persons."[181]

The Fifth Circuit has applied both one-year and ten-year prescriptive periods to detrimental reliance claims.[182] For example, in *Stokes v. Georgia-Pacific Corp.*, the Fifth Circuit concluded that a ten-year prescriptive period for actions on contracts applied to the plaintiff's detrimental reliance claim.[183] The court noted that La. Civ. Code art. 1967, the article governing detrimental reliance claims, appears in Book III, Title IV, titled "Conventional Obligations or Contracts," of the Louisiana Civil Code.[184] The Fifth Circuit also explained that "the eminent scholar who directed the drafting of the new articles expressly places detrimental reliance in the contract realm."[185] In *Copeland v. Wasserstein, Perella & Co.*, on the other hand, the Fifth Circuit affirmed application of a one-year prescriptive period for the plaintiff's detrimental reliance claim.[186] In *Copeland*, the plaintiff alleged that the defendant, a financial adviser, fell short of the standard of care among financial advisers, a claim the court described as "quintessentially delictual."[187]

---

[179] *See* La. Civ. Code arts. 3492, 3499; *First La. Bank v. Morris & Dickson, Co., LLC*, 45,668 (La. App. 2 Cir. 11/3/10), 55 So. 3d 815, 825.
[180] *Id.* (internal quotation marks omitted).
[181] *Terrebonne Par. Sch. Bd. v. Mobil Oil Corp.*, 310 F.3d 870, 886 (5th Cir. 2002).
[182] *Keenan*, 575 F.3d at 487.
[183] *Stokes v. Georgia-Pac. Corp.*, 894 F.2d 764, 770 (5th Cir. 1990).
[184] *Id.*; *see also* LA. CIV. CODE art. 1967.
[185] *Stokes*, 894 F.2d at 770 (citing Saul Litvinoff, *Still Another Look at Cause*, 48 LA. L. REV. 3, 27–28 (1987)).
[186] *Copeland*, 278 F.3d at 479–80.
[187] *Id.*

The Court finds that Plaintiffs' detrimental reliance claims "derive from a breach of promise, like *Stokes*, rather than a breach of duty, like *Copeland*."[188] To establish a contractual claim for detrimental reliance, a plaintiff need only show that "a promise was made, he relied on the promise, the promise was broken, and as a result he suffered loss."[189] Plaintiffs have clearly alleged that an oral contract was created when Plaintiffs contacted Defendants to obtain preauthorization to perform the procedures.[190] Plaintiffs allege, for example, that the verifications of benefits and preauthorizations of the procedures created "bilateral onerous commutative oral contracts whereby Plaintiffs would provide their agreed upon covered and pre-authorized services at a predetermined rate that reflect the benefits provided by their subscribers' respective plans"[191] and, in exchange, Defendants created a duty "to tender the represented percentage to [Plaintiffs] based on the representation."[192] Thus, Plaintiffs have alleged that a promise on part of Defendants was made. Plaintiffs also allege that "Plaintiffs based their decisions to provide said services on Defendants' representations of payment" and that, had they known that the representations "were nothing more than a hoax to lure them into providing their services at a discounted rate, [Plaintiffs] would have declined to provide same unless other guaranteed payment arrangements could be made."[193] Thus, Plaintiffs have alleged that they relied on a promise made by Defendants. "A promise becomes an enforceable obligation [a contract] when it is made in a manner that induces the other

---

[188] *Keenan*, 575 F.3d at 487.

[189] *State v. Murphy Cormier Gen. Contractors, Inc.*, 2015-111 (La. App. 3 Cir. 6/3/15), 170 So. 3d 370, 379–80, *writ denied*, 2015-1297 (La. 9/25/15), 178 So. 3d 573 ("There is a promisor and a promise . . . , there is cause, there is offer and acceptance, i.e., the promisor offers to do or not do something, and the promisee, accepting that offer or promise, acts accordingly and suffers loss to his detriment.").

[190] *See* R. Doc. 308 at ¶¶ 206–30.

[191] *Id.* at ¶ 224.

[192] *Id.* at ¶ 225.

[193] *Id.* at ¶¶ 214–15.

party to rely on it to his detriment."[194] Plaintiffs have also alleged that "Defendants failed to tender the represented amount"[195] and that, as a result, Plaintiffs have suffered "financial harm in the form of lost income for services performed."[196] Therefore, the Court finds that Plaintiffs' detrimental reliance claims are contractual in nature and subject to a ten-year prescriptive period.[197] Accordingly, summary judgment on Plaintiffs' claims for detrimental reliance in Count V is denied.

## CONCLUSION

For the foregoing reasons;

**IT IS ORDERED** that the motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART** as set forth above.[198]

**IT IS FURTHER ORDERED** that the parties provide the Court with an amended Exhibit I to the Fifth Amended Complaint by **June 6, 2016**, to reflect the rulings contained in this Order. If the parties cannot agree on the disposition of any claim as a result of this Order, Defendants have until **May 20, 2016**, to file a supplemental memorandum identifying each claim Defendants argue is subject to summary judgment based on this Order. Defendants must provide competent summary judgment evidence to demonstrate why Defendants are entitled to summary judgment on each disputed claim. Plaintiffs have until **May 27, 2016**, to file an opposition to Defendants' supplemental memorandum. Plaintiffs must provide competent summary judgment evidence to support any contested dates or establish other material facts with respect to each claim identified by Defendants.

---

[194] *Murphy*, 170 So. 3d at 380.
[195] R. Doc. 308 at ¶ 213.
[196] *Id.* at ¶ 217.
[197] *See Murphy*, 170 So. 3d at 379–80.
[198] R. Doc. 458.

New Orleans, Louisiana, this 6th day of May, 2016.

_____

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**