**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| THE CENTER FOR RESTORATIVE | * | |
| BREAST SURGERY, L.L.C., ET AL., | * | |
| | * | CIVIL ACTION NO. 11-806 |
| Plaintiffs, | * | |
| | * | |
| VERSUS | * | |
| | * | SECTION E (MORGAN) |
| BLUE CROSS BLUE SHIELD OF | * | |
| LOUISIANA, ET AL., | * | |
| | * | |
| Defendants. | * | MAGISTRATE 5 (NORTH) |
| | * | |
| *    *    *    *    *    *    * | | |

**MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT AS A MATTER OF
LAW PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 50(a)**

Bellwether Defendants, Louisiana Health Service & Indemnity Company d/b/a Blue Cross Blue Shield of Louisiana ("BCBSLA"), Blue Cross and Blue Shield of Alabama ("BCBSAL"), Blue Cross and Blue Shield of Mississippi ("BCBSMS") and Blue Cross and Blue Shield of North Carolina ("BCBSNC"), submit this memorandum in support of their motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a) with respect to the negligent misrepresentation bellwether claims, the trial of which began on December 5, 2016. As is discussed below, the Court should enter judgment in Bellwether Defendants' favor on Plaintiffs' negligent misrepresentation claims because the record, evidence, and the testimony offered at trial make clear that, despite over five years of litigation and multiple corrective opportunities afforded by this Court, Plaintiffs do not have a legally sufficient evidentiary basis to support the negligent misrepresentation claims, requiring their dismissal as a matter of law.

{N3333676.2}                                    1

## I.    CLAIMS AT ISSUE IN BELLWETHER TRIAL

The December 5 jury trial arises out of alleged negligent misrepresentations made by Defendants to Plaintiffs (through their representatives at Sigma Delta Billing) when Plaintiffs telephoned Defendants to verify insurance benefits for the following patients:

BCBSAL Bellwether Patient L.F. (Claim Line H483);

BCBSLA Bellwether Patient A.B. (Claim Lines C143, H137);

BCBSLA Bellwether Patient C.B. (Claim Line C202, H179);

BCBSLA Bellwether Patient G.H. (Claim Lines C670, H609, H610);

BCBSLA Bellwether Patient S.S. (Claim Line C1265);

BCBSMS Bellwether Patient G.H. (Claim Line C679); and,

BCBSNC Bellwether Patient M.B. (Claim Line H80).

In each case, Plaintiffs' representative asked certain questions about the terms and conditions of the bellwether patients' insurance plans and Defendants responded to these questions. Plaintiffs contend that Defendants' responses with respect to the basis on which insurance benefits would be determined – *i.e.*, the "allowable charge" – omitted certain information about how the allowable charge would be determined (that is, the dollar amount of the allowable charge or the formula for obtaining that dollar amount). Plaintiffs contend that the information provided by Defendants induced them to treat the bellwether patients and that Plaintiffs were damaged when the benefit payments they received for these treatments were less than what was represented during the phone calls. As shown below, in addition to being contrary to the parties' stipulation, Plaintiffs' contentions are unsupported by the evidence and the testimony offered at trial.

## II.    LEGAL STANDARD

### A.    The Pretrial Order Supersedes All Pleadings And Is The Governing Document At Trial

The parties filed the operative joint Pre-Trial Order on November 15, 2016.  Doc. 692 (hereinafter "PTO").  The Fifth Circuit "abides by the rule that a joint pretrial order signed by both parties supersedes all pleadings and governs the issues and evidence to be presented at trial."  *Provident Fin. Inc. v. Strategic Energy L.L.C.*, 404 F. App'x 835, 838 (5th Cir. 2010).  This rule applies even "despite [an] inadvertent failure to require the formal signing of the order, [because a pretrial order] must be treated as controlling in accordance with Rule 16."  *United States v. Texas*, 523 F. Supp. 703, 720 n.8 (5th Cir. 1981); *accord Looney Ricks Kiss Architects, Inc. v. Bryan*, No. 07–0572, 2014 WL 931768, at *1 (W.D. La. Mar. 10, 2014).  Additionally, "these orders and stipulations [they contain], freely and fairly entered into, are not to be set aside except to avoid manifest injustice."  *Sherman v. United States*, 462 F.2d 577, 579 (5th Cir. 1972).

### B.    Judgment As A Matter Of Law Is Appropriate When The Court Finds That A Reasonable Jury Would Not Have A Legally Sufficient Evidentiary Basis To Find For A Party

"If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue," then a court may enter judgment as a matter of law against that party.  Fed. R. Civ. P. 50(a).  In making such a determination, a court must "draw all reasonable inferences in favor of the nonmoving party, and . . . may not make credibility determinations or weigh the evidence."  *Advanced Tech. Bldg. Solutions, L.L.C. v. City of Jackson*, 817 F.3d 163, 165 (5th Cir. 2016).

Despite this, a court may give "credence to evidence supporting the moving party that is uncontradicted and unimpeached if that evidence comes from disinterested witnesses." *Advanced Tech.*, 817 F.3d at 165.  The proper time for making a motion for judgment as a matter of law is after "a party has been fully heard on an issue" and "any time before the case is submitted to the jury." Fed. R. Civ. P. 50(a).

## III.  LAW APPLICABLE TO PLAINTIFFS' NEGLIGENT MISREPRESENTATION CLAIM

Under Louisiana law, the tort of negligent misrepresentation has three elements: (1) there must be a legal duty on the part of the defendant to supply correct information; (2) there must be a breach of that duty; and (3) the breach must have caused damages to the plaintiff.  *Schaumburg v. State Farm Mut. Auto. Ins. Co.*, 421 F. App'x 434, 440 (5th Cir. 2001) (citing cases); *Daye v. Gen. Motors Corp.*, 720 So. 2d 654, 659–60 (La. 1998).  A "negative answer" with respect to any of these elements results in a determination of no liability.  *Id.* at 660–61.

### A.     Duty

Whether a duty is owed is a question of law.  *Kadlec Med. Ctr. v. Lakeview Anesthesia Assoc.*, 527 F.3d 412, 420-421 (5th Cir. 2008) (citing *Bunge Corp. v. GATX Corp.*, 557 So. 2d 1376, 1384 (La. 1990)).  This Court has previously made the determination that Defendants have a duty to provide correct information to Plaintiffs when verifying a patient's health insurance benefits.  Doc. 585 at 27.  "Correct" information means both that the facts supplied are accurate and that no material facts have been omitted.  *Id.* at 27-28.

**B.    Breach of Duty**

Whether a defendant has breached a duty is a question of fact.  *Mundy v. Dep't of Health & Human Res.*, 620 So. 2d 811, 813 (La. 1993).  In a claim for negligent misrepresentation, a defendant can breach its duty to provide correct information in two ways:  first, by failing to supply facts that are accurate or truthful; or, second, by omitting a material fact from the information supplied to the plaintiff.  Before trial, Plaintiffs stipulated that the information Defendants provided during the telephone verification calls was accurate and/or truthful.[1]  Accordingly, the only issue concerning breach to be decided by the jury is whether any of the Defendants omitted material facts from the otherwise accurate information supplied to either of the Plaintiffs.

In order for the jury to conclude that a defendant breached its duty to provide correct information by omitting material facts, the jury must find that (a) a defendant had superior knowledge to that of the plaintiff concerning the facts at issue, and (b) that the defendant knew the plaintiff was relying upon the defendant for such knowledge.  As the Fifth Circuit stated in *Schaumburg:*

> The Louisiana Supreme Court has held that a duty to provide correct information was "imposed by law based upon policy considerations due to the tortfeasor's knowledge of the prospective use of the information which expands the bounds of his duty of reasonable care to encompass the intended user."  *Barrie v. V.P.*

---

[1] *See* Pre-trial Order (Doc. 653) ("PTO") Section VII.B., ¶¶ 1.g (BCBSAL Bellwether Patient L.F.); 2.a.vii, 2.b.vii (BCBSLA Bellwether Patient A.B.); 3.a.vii, 3.b.viii (BCBSLA Bellwether Patient C.B.); 4.a.vii, 4.b.vii, 4.c.vii (BCBSLA Bellwether Patient G.H.); 5.g (BCBSLA Bellwether Patient S.S.); 6.h (BCBSMS Bellwether Patient G.H.); and, 7.k (BCBSNC Bellwether Patient M.B.); *accord* Doc. 585 at 28 ("Although the Plaintiffs concede the Defendants did not provide untruthful information in the verification calls, . . . .").

> *Exterminators, Inc.*, 625 So. 2d 1007, 1016 (La. 1993).  "***The theme in [Louisiana cases on negligent misrepresentation] is that one is liable for negligent disclosure if he has superior knowledge and knows the other party is relying upon him for such knowledge.***"  Frank L. Maraist & Thomas C. Galligan, Jr., Louisiana Tort Law § 5.07[8] (2d ed. 2004) (citing *Barrie*; *Devore v. Hobart Mfg. Co.*, 367 So. 2d 836 (La. 1979); *Cagle v. Loyd*, 617 So. 2d 592 (La. App. 3d Cir. 1993)).

421 F. App'x at 440-41 (emphasis added); *accord Kadlec*, 527 F.3d at 419 ("[I]f he volunteers to speak and to convey information ***which may influence the conduct of the other party***, he is bound to disclose the whole truth."  (emphasis added)).  The Louisiana Supreme Court's *Barrie* decision, cited by the *Schaumburg* Court, likewise imposed liability because the tortfeasor knew the recipient's intended use of the information supplied:

> Tort liability extending to third persons for whose benefit and guidance the wood destroying insect report is supplied, promotes the maintenance of a high quality of services by the licensed structural pest control operator and imparts confidence in those services to the contracting party ***and to those persons who, due to current business practices, are expected to receive and rely upon the contents of the report.***

*Barrie*, 625 So. 2d at 1017-18 (emphasis added).

In the instant case, the question of breach turns on whether (a) each Defendant knew the dollar amount of the allowable charge (or method of calculating this dollar amount) for the specific treatment Plaintiff would ultimately provide the relevant bellwether patient, (b) each Defendant omitted that information in its discussion with Plaintiff concerning the bellwether patient's insurance benefits, and (c) each Defendant in question knew Plaintiff (i) was relying on it to explain the calculation of the allowable charge or (ii) would be influenced by the statements regarding the allowable charge.

## C.    Causation

Under Louisiana law, a plaintiff bringing a tort-based cause of action, such as negligent misrepresentation, must show that a defendant's substandard conduct was the cause-in-fact of the harm sustained by the plaintiff - *i.e.*, that "but for" the defendant's substandard conduct, the Plaintiff would have suffered no harm.  *Daye v. Gen. Motors Corp.*, 720 So. 2d 654, 659–60 (La. 1998) ("The inquiry to be made is whether the accident would have occurred but for the defendant's alleged substandard conduct or, when concurrent causes are involved, whether defendant's conduct was a substantial factor in bringing about the accident."   (citations omitted)); *Ethyl Corp. v. Gulf States Utils., Inc.*, 836 So. 2d 172, 179 (La. Ct. App. 1 Cir. 10/2/02).

In the instant case, the causation element required Plaintiffs to show that they would not have treated these patients if Plaintiffs had been told the amount and the calculation of the allowable charge.  In other words, Plaintiffs are required to prove that their decisions to treat these patients were based on the statements by Defendants concerning the allowable charge, and that these decisions to treat would have been different if Defendants had explained how the allowable charges were derived.  *See Schaumburg*, 421 F. App'x at 441 ("The only remaining element of negligent misrepresentation is that the breach of the duty to provide correct information caused damages to the plaintiff.  Again, taking the evidence in the light most favorable to Schaumburg, his reliance on the allegedly incorrect information given to him by State Farm caused him to suffer financial harm because it induced him to make the decision to retire early instead of continuing to work and earn income."); *Daye v. Gen. Motors Corp.*, 720

So. 2d 654, 660 (La. 1998) ("We find that the sole cause of Samuel's accident was his own negligence due to his excessive speed and his imprudent application of his brakes, not his reliance on GM's promotional information."); *Barrie*, 625 So. 2d at 1017-18; *Ethyl Corp. v. Gulf States Utils., Inc.*, 836 So. 2d 172, 179 (La. Ct. App. 1 Cir. 10/2/02) ("The record reflects that Ethyl relied totally on Entergy's statements that a new substation was its only source of adequate electric service in the future."); *Pastor v. Lafayette Bldg. Ass'n*, 567 So. 2d 793, 795 (La. App. 3 Cir. 1990) (Pastor's testimony that "he relied on the appraisal supplied to him by LBA" and "relied on their assurances that he would be in the same position as prior to the sale" furnished reasonable basis for trial court finding of cause in fact.); *Cypress Oilfield Contr. v. McGoldrick Oil*, 525 So. 2d 1157, 1161 (La. App. 3rd Cir. 1988) ("The uncontradicted testimony of Hardy and Reed, employees of McGoldrick, was that McGoldrick relied on the assurance by FAB and its officer, Lavergne, that the 'financial stability' of GDL was 'not in jeopardy.'").

## IV.    DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW ON PLAINTIFFS' NEGLIGENT MISREPRESENTATION CLAIMS

### A.    The Uncontested Facts and Evidence Show That There Is No Duty To Disclose How The Allowable Is Calculated For A Particular Treatment When Plaintiffs Failed To Disclose The Treatment To Be Provided For Two Patients

As discussed above, there is a duty to supply "correct" information, which requires both accuracy and completeness.  As the Court previously recognized, the allowable amount depends on the very specific treatment being provided.  Doc. 585 at 25 ("Plaintiffs' argument that the Defendants negligently misrepresented ***the cost of a procedure*** by providing only a 'vague reference point for the allowable amount' must fail" (emphasis added)); *accord id.* at 29

("Disputed facts exist with respect to whether the Plaintiffs' suffered any damage as a result of the Defendants failing to explain to the Plaintiffs the method of calculating the allowable amount or dollar figure for the allowable amount *for the relevant service*." (emphasis added)).  In the case of BCBSMS patient G.H. and BCBSNC patient M.B., it is stipulated that Plaintiffs never disclosed the treatment to be rendered to those bellwether patients.  Accordingly, there can be no duty to supply procedure-specific information relating to an unknown procedure.

First, CRBS's representative did not tell BCBSMS what treatment CRBS intended to provide bellwether patient G.H. or supply any particular treatment codes to BCBSMS during the verification call.  PTO § VII(B)(6)(f).  Second, SCSH's representative did not tell BCBSNC what treatment SCSH intended to provide bellwether patient M.B.  *Id.* § VII(B)(7)(g).

In each of these cases, Plaintiffs failed to inform BCBSMS or BCBSNC what treatment was going to be rendered, nor did Plaintiffs inquire about the dollar amount to be paid, both of which precluded any duty to disclose the amount BCBSMS or BCBSNC would pay *for a particular procedure*.  Accordingly, the negligent misrepresentation claims against BCBSMS and BCBSNC should be dismissed.

B.    **The Uncontested Facts and Evidence Show That Plaintiffs Cannot Establish Defendants Breached Any Duty To Plaintiffs**

The stipulated facts confirm that there is no evidentiary basis for Plaintiffs to prove breach of the duty to disclose the dollar amount of their allowable amount (or how that dollar amount is calculated) for a particular treatment with respect to any Defendant.  First, Defendants could not breach this duty where Plaintiffs could not show that any Defendant in the bellwether

negligent misrepresentation trial knew that Plaintiffs were relying on them to provide the dollar amount of the "allowable" for the medical treatments being rendered, or the manner in which the allowable was calculated. Not only did Plaintiffs not ask the question "what is the amount of the allowable," they did not convey to Defendants that this information was important to them in any way. *Schaumburg*, 421 F. App'x at 441; *accord Kadlec*, 527 F.3d at 419 ("[I]f he volunteers to speak and to convey information **which may influence the conduct of the other party**, he is bound to disclose the whole truth." (emphasis added)). Second, where Defendants informed Plaintiffs that they could not supply the allowable amount, Defendants fulfilled their duty of complete disclosure.

Regarding Defendants' alleged superior knowledge, the stipulated facts show that Defendants could not have known that Plaintiffs would base their decision to treat the bellwether patients on the information provided during the verification call. Specifically:

- For bellwether patient L.F. (claim H483), a disclaimer was played at the outset of the call which, among other things, stated "the information provided is only general benefit information and is not a guarantee of payment." PTO § VII(B)(1)(e). BCBSAL specifically asked SCSH's representative if they were familiar with the disclaimer, which the representative acknowledged. *Id.* § VII(B)(1)(f). BCBSAL then informed SCSH's representative that the disclaimer applied to any information provided by BCBSAL. *Id.*

- For bellwether patient A.B. (claim C143), BCBSLA specifically informed the CRBS representative through its disclaimer that the call "does not guarantee eligibility for or payment of benefits" and that "[a]ll claims are subject to the member's contractual provisions … and our medical policies, which can be reviewed at www.BCBSLA.com or iLinkBlue." PTO § VII(B)(2)(a)(iv-v).[2]

---

[2] In fact, CRBS cannot meet the first legal element of their negligent misrepresentation claim – the existence of a duty – because it never asked for benefits for the professional services

- For bellwether patient A.B. (claim H137), BCBSLA specifically informed the SCSH representative through its disclaimer that the call "does not guarantee eligibility for or payment of benefits" and that "[a]ll claims are subject to the member's contractual provisions … and our medical policies, which can be reviewed at www.BCBSLA.com or iLinkBlue." PTO § VII(B)(2)(b)(iv-v). Moreover, BCBSLA told the SCSH representative that "as far as a particular code that you all doing, I'm not – won't be able to give you benefits on that," to which the representative responded "Right. Okay." *Id.* § VII(B)(2)(b)(vi).

- For bellwether patient C.B. (claim C202), BCBSLA specifically informed the SCSH representative through its disclaimer that the call "does not guarantee eligibility for or payment of benefits" and that "[a]ll claims are subject to the member's contractual provisions … and our medical policies, which can be reviewed at www.BCBSLA.com or iLinkBlue." PTO § VII(B)(3)(a)(iv-v).[3]

- For bellwether patient C.B. (claim H179), BCBSLA specifically informed the SCSH representative through its disclaimer that the call "does not guarantee eligibility for or payment of benefits" and that "[a]ll claims are subject to the member's contractual provisions … and our medical policies, which can be reviewed at www.BCBSLA.com or iLinkBlue." PTO § VII(B)(3)(b)(v-vi).

- For bellwether patient G.H. (claim C670), BCBSLA specifically informed the CRBS representative through its disclaimer that the call "does not guarantee eligibility for or payment of benefits" and that "[a]ll claims are subject to the member's contractual provisions … and our medical policies, which can be reviewed at www.BCBSLA.com or iLinkBlue." PTO § VII(B)(4)(a)(iv-v).

---

being rendered by Dr. Sullivan (CRBS). The only information requested was for facility benefits (SCSH). PTO § VII(B)(2)(a)(iv) (stipulating that 143.wav is the recording of the call at issue); *accord* Ex. 24 (143.wav) Tr. at 5 (identifying "facility" as "St. Charles Surgical Hospital"), 6 (requesting "outpatient surgery for the hospital, for both in and out-of-network, please"). In other words, benefits for CRBS were never discussed and there is no general duty to volunteer. *Kadlec*, 527 F.3d at 419, 420.

[3] In fact, CRBS cannot meet the first legal element of their negligent misrepresentation claim – the existence of a duty – because it never asked for benefits for the professional services being rendered by Dr. Sullivan. The only information requested was for facility benefits. PTO § VII(B)(3)(a)(iv) (stipulating that 202.wav is the recording of the call at issue); *accord* Ex. 36 (202.wav) Tr. at 5 (identifying "provider" as "St. Charles Surgical Hospital"), 7 ("I'm looking for outpatient surgical benefits for the facility"). In other words, benefits for CRBS were never discussed and there is no general duty to volunteer. *Kadlec*, 527 F.3d at 419, 420.

- For bellwether patient G.H. (claim H609), BCBSLA specifically informed the SCSH representative through its disclaimer that the call "does not guarantee eligibility for or payment of benefits" and that "[a]ll claims are subject to the member's contractual provisions … and our medical policies, which can be reviewed at www.BCBSLA.com or iLinkBlue." PTO § VII(B)(4)(b)(iv-v).

- For bellwether patient G.H. (claim H610), BCBSLA specifically informed the SCSH representative through its disclaimer that the call "does not guarantee eligibility for or payment of benefits" and that "[a]ll claims are subject to the member's contractual provisions … and our medical policies, which can be reviewed at www.BCBSLA.com or iLinkBlue." PTO § VII(B)(4)(c)(iv-v).

- For bellwether patient S.S. (claim C1265), BCBSLA specifically informed the SCSH representative through its disclaimer that the call "does not guarantee eligibility for or payment of benefits" and that "[a]ll claims are subject to the member's contractual provisions … and our medical policies, which can be reviewed at www.BCBSLA.com or iLinkBlue." PTO § VII(B)(5)(d-e).[4]

- For bellwether patient G.H. (claim C679), BCBSMS specifically informed the CRBS representative through its disclaimer that it "does not provide benefit information for specific procedure codes. There is no guarantee of payment." PTO § VII(B)(6)(e). BCBSMS also informed the representative that payment was "[b]ased on your local's allowance" in response to the question of "[o]n what bases are the benefits calculated?" *Id.* § VII(B)(6)(g).

- For bellwether patient M.B. (claim H80), BCBSNC specifically informed the SCSH representative that "[a]ny information about benefits and eligibility provided to you during this call does not guarantee payment. Decisions about payment will be made when the claim is reviewed." PTO § VII(B)(7)(e). The SCSH representative asked "[O]nce the deductible is met and they're covered at 50 percent, is that 50 percent of your allowed amount, UCF, Medicare Fee Schedule? What's the basis for your calculation." *Id.* § VII(B)(7)(h). In

---

[4] In fact, CRBS cannot meet the first legal element of their negligent misrepresentation claim – the existence of a duty – because it never asked for benefits for the professional services being rendered by Dr. Sullivan. The only information requested was for facility benefits. PTO § VII(B)(5)(d) (stipulating that 1265.wav is the recording of the call at issue); *accord* Ex. 64 (1265.wav Tr.) at 5 (identifying "provider" as "St. Charles Surgical Hospital"), 6 ("We're looking for inpatient surgical benefits for the facility, please"). In other words, benefits for CRBS were never discussed and there is no general duty to volunteer. *Kadlec*, 527 F.3d at 419, 420.

response, BCBSNC told the representative "we don't have access to the allowed amount, but we are going to apply the allowed amount. … Here at customer service, we don't have access to that." *Id.* § VII(B)(7)(i).

As these ***stipulated facts*** and uncontested call transcripts reflect, Defendants could not know that Plaintiffs intended to misconstrue the verification calls as a commitment to make any payment whatsoever.   In short, nothing in the call would have alerted a Defendant telephone representative that Plaintiffs were seeking the information Plaintiffs allege was misrepresented through omission.

Finally, even if CRBS or SCSH had shown that the calls caused them to act (or not act), their actions could not be deemed reasonable because each verification call transcript contains the above-referenced disclaimer language to the effect that information supplied is not a guarantee of payment and benefit payments will be based on the members' benefit plan.  Where a disclaimer is offered and the party to whom the disclaimer is offered fails to request further assurance or clarification in spite of the disclaimer, that party cannot prove it was reasonable to act in contravention of the disclaimer language.  *Nat'l Marine, Inc. v. Glencore, Ltd.*, 1998 WL 204734, *4 (E.D. La. Apr. 23, 1998).

## C.    Causation

The stipulated facts, testimony, and evidence confirm that Plaintiffs did not take or forego any action based on allegedly incomplete information given to them by any Defendant in the bellwether negligent misrepresentation trial.  *Schaumburg*, 421 F. App'x at 441.  In fact, the stipulated facts and testimony establish that Plaintiffs' decisions to treat the bellwether patients in question were made ***without any consideration of the telephone calls***.  It is stipulated, and the

testimony confirms, that the Plaintiffs' decision-makers did not participate in these calls and did not review the insurance verification sheets made during them. It is further stipulated, and the testimony confirms, that the Plaintiffs' decision-makers did not consider the bellwether patients' insurance benefits *at all* when deciding to treat them.

- In all cases, the decisions to treat the bellwether patients were made by either Dr. Sullivan or Dr. Dellacroce.[5]

- Neither Dr. Sullivan nor Dr. Dellacroce telephoned any Defendant to verify patient insurance benefits;[6]

- For each telephone verification call, Plaintiffs' agents are supposed to complete an insurance verification sheet; however, neither Dr. Sullivan nor Dr. Dellacroce reviewed these sheets.[7]

---

[5] *See, e.g.,* PTO §§ VII(B)(1)(c) (Dr. Sullivan made the decision to treat BCBSAL bellwether patient L.F.); VII(B)(2)(a)(iii), VII(B)(2)(b)(iii) (Dr. Sullivan made the decisions to treat BCBSLA bellwether patient A.B.); VII(B)(3)(a)(iii), VII(B)(3)(b)(iv) (Dr. Sullivan made the decision to treat BCBSLA bellwether patient C.B.); VII(B)(4)(a)(iii), VII(B)(4)(b)(iii), VII(B)(4)(c)(iii) (Dr. Dellacroce made the decisions to treat BCBSLA bellwether patient G.H.); VII(B)(5)(c) (Dr. Sullivan made the decision to treat BCBSLA bellwether patient S.S.); VII(B)(6)(c) (Dr. Sullivan made the decision to treat BCBSMS bellwether patient G.H.); and VII(B)(7)(c) (Dr. Dellacroce made the decision to treat BCBSNC bellwether patient M.B.).

[6] *See, e.g.,* PTO §§ VII(B)(1)(d) (BCBSAL Bellwether Patient L.F.); VII(B)(2)(a)(iv), VII(B)(2)(b)(iv) (BCBSLA Bellwether Patient A.B.); VII(B)(3)(a)(iv), VII(B)(3)(b)(iv) (BCBSLA Bellwether Patient C.B.); VII(B)(4)(a)(iv), VII(B)(4)(b)(iv), VII(B)(4)(c)(iv) (BCBSLA Bellwether Patient G.H.); VII(B)(5)(d) (BCBSLA Bellwether Patient S.S.); VII(B)(6)(d) (BCBSMS Bellwether Patient G.H.); and VII(B)(7)(d) (BCBSNC Bellwether Patient M.B.).

[7] *See, e.g.,* PTO §§ VII(B)(1)(j) (BCBSAL Bellwether Patient L.F.); VII(B)(2)(a)(x), VII(B)(2)(b)(x) (BCBSLA Bellwether Patient A.B.); VII(B)(3)(a)(x), VII(B)(3)(b)(xi) (BCBSLA Bellwether Patient C.B.); VII(B)(4)(a)(x), VII(B)(4)(b)(x), VII(B)(4)(c)(x) (BCBSLA Bellwether Patient G.H.); VII(B)(5)(j) (BCBSLA Bellwether Patient S.S.); VII(B)(6)(k) (BCBSMS Bellwether Patient G.H.); and VII(B)(7)(n) (BCBSNC Bellwether Patient M.B.).

- In fact, neither Dr. Sullivan nor Dr. Dellacroce considered the bellwether patients' insurance benefits when deciding to treat the patients. [8]

In other words, it is undisputed that the allegedly incomplete information supplied during the phone calls was not even considered by Plaintiffs' decision-makers when those individuals made the decisions to treat each of the bellwether patients.

Plaintiffs' position is that: (a) they were told certain information about the bellwether patients' insurance benefits during each of the phone calls; (b) this insurance benefit information caused them to treat the bellwether patients; and, (c) Plaintiffs were damaged when the insurance benefits they were paid after treatment did not match the insurance benefit information they were told during the phone calls. *See* Doc. 585 at 23 (summarizing Plaintiffs' arguments); *accord id.* at 28 (summarizing Plaintiffs' allegations that they were damaged when alleged misrepresentations caused them to "render[] care and treatment"). Yet, by Plaintiffs own admissions, the statements made during the phone calls did not cause them to do anything. The decisions to treat the bellwether patients were made without any consideration of the contents of the telephone calls – the decision-makers did not participate in the calls and they did not review the verification sheets which purported to collect the information supplied during the calls.

---

[8] *See, e.g.,* PTO §§ VII(B)(1)(l) (BCBSAL Bellwether Patient L.F.); VII(B)(2)(a)(xii), VII(B)(2)(b)(xi) (BCBSLA Bellwether Patient A.B.); VII(B)(3)(a)(xi), VII(B)(3)(b)(xii) (BCBSLA Bellwether Patient C.B.); VII(B)(4)(a)(xi), VII(B)(4)(b)(xi), VII(B)(4)(c)(xi) (BCBSLA Bellwether Patient G.H.); VII(B)(5)(k) (BCBSLA Bellwether Patient S.S.); VII(B)(6)(m) (BCBSMS Bellwether Patient G.H.); and VII(B)(7)(p) (BCBSNC Bellwether Patient M.B.).

Additionally, in each of the following cases, the decision to treat the bellwether patient was made *before* either Plaintiff telephoned any Defendant to verify insurance benefits.

- Bellwether patient L.F. underwent surgery at SCSH on July 22, 2010.  PTO § VII(B)(1)(a).  Fifteen days prior, on July 7, 2010, Plaintiffs' agent telephoned Defendant BCBSAL to verify benefits.  *Id.* § VII(B)(1)(d).  At the time of this telephone call, bellwether patient L.F. was already scheduled for surgery.  *Id.* § VII(B)(1)(k).

- Bellwether patient A.B. underwent surgery on August 31, 2010.  PTO § VII(B)(2)(a)(i).  Six days prior, on August 25, 2010, Plaintiffs' agent telephoned Defendant BCBSLA to verify benefits.  *Id.* § VII(B)(2)(a)(iv).  At the time of this telephone call, bellwether patient A.B. was already scheduled for surgery.  *Id.* § VII(B)(2)(a)(xi).

- Bellwether patient G.H. underwent surgery at SCSH on November 14, 2013.  PTO § VII(B)(6)(a).  Previously, on August 26, 2013, Plaintiffs' agent telephoned Defendant BCBSMS to verify benefits.  *Id.* § VII(B)(6)(d).  At the time of this telephone call, bellwether patient G.H. was already scheduled for surgery.  *Id.* § VII(B)(6)(l).

- Bellwether patient M.B. underwent surgery at SCSH on August 10, 2010.  PTO § VII(B)(7)(a).  Previously, on June 9, 2010, Plaintiffs' agent telephoned Defendant BCBSNC to verify benefits.  *Id.* § VII(B)(7)(d).  At the time of this telephone call, bellwether patient M.B. was already scheduled for surgery.  *Id.* § VII(B)(1)(o).

In each of these cases, Plaintiffs cannot establish causation because there is no evidence showing that the information supplied or omitted during the telephone calls was a but-for cause of Plaintiffs' decisions to treat the bellwether patients at issue.  To the contrary, each of these decisions was made *before* the telephone call even took place and the telephone call could not have contributed (much less induced) that decision.  BCBSAL, BCBSMS, and BCBSNC are entitled to judgment as a matter of law on their bellwether patients at issue and the negligent

misrepresentation claims against them dismissed. Likewise, BCBSLA is entitled to judgment as a matter of law with respect to patient A.B. (claim C143).

**D.      Plaintiffs Have No Evidence of Damages**

Finally, multiple evidentiary problems led this Court to exclude certain testimony and evidence concerning damages (Docs. 665, 672, and 686). And at trial, Plaintiffs could not prove any damages resulting from the conduct of any Defendant.

First, the PTO is devoid of any fact, either contested or uncontested, as to any damage actually suffered by Plaintiffs. *See* PTO §§ VII(B) (uncontested material facts relating to negligent misrepresentation bellwether claims), VIII(B) (contested material facts relating to negligent misrepresentation bellwether claims). As discussed above, the PTO is the controlling document, and Plaintiffs' failure to provide any statement of fact (either uncontested or contested) as to their actual damages is fatal to their claim.

Second, Plaintiffs' failed to present any evidence of actual damages caused by Defendants. A jury cannot award damages without evidentiary support for the award. *See Masinter v. Tenneco Oil Co.*, 929 F.2d 191, 194 (5th Cir. 1991) ("[A]n award for damages cannot stand when the evidence to support it is speculative or purely conjectural."). During a telephone status conference on November 23, 2016, Plaintiffs' counsel represented to the Court that its damages are not the billed charges submitted by Plaintiffs for the treatments at issue. *E.g.,* Doc. 672 (Minute entry memorializing status conference).[9] Indeed, at that same time,

---

[9] *See also* PTO § VII(B) (for each bellwether patient, it is uncontested that (1) Defendants did not quote benefits on the basis of billed charges or as a percentage of billed charges, and (2)

Plaintiffs' counsel stipulated that Plaintiffs damages were not based on lost profits or loss of business opportunity. *Id.*[10] If damages are not based on the billed charges themselves, on lost profits, on lost business opportunities, or on any out-of-pocket losses, it begs the question of what actually constitutes the measure of Plaintiffs' damages. The answer was revealed at trial: ***nothing***. Plaintiffs presented no evidence of pecuniary loss resulting from the action or inaction of Defendants.[11]

### E.    Claim H137 (Bellwether Patient A.B.) Is Prescribed

Negligent misrepresentation is a tort claim, and is subject to a one-year prescriptive period under Louisiana law. Doc. 525 at 30 (footnotes omitted). "Under Louisiana law, prescription commences when a plaintiff has actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort. 'Constructive knowledge is whatever notice is enough to excite attention and put the injured party on guard and call for inquiry. Such notice is tantamount to knowledge or notice of everything to which a reasonable inquiry may lead.'" *Id.* (footnotes omitted).

The uncontested evidence shows that this claim is prescribed. This claim involves services rendered by SCSH commencing December 12, 2009. PTO § VII(B)(2)(b)(i). SCSH's

---

Defendants did not represent any relationship between the benefits to be paid and Plaintiffs' billed charges).

[10] As discussed in the Objection (Doc. 681 at 8-10), Plaintiffs also cannot recover any alleged out-of-pocket losses because Plaintiffs have no evidence of any such losses.

[11] Furthermore, as discussed in the Objection, Plaintiffs cannot simply ask the jury to award them "fair" damages absent some evidence of what "fair" damages would be. They are simply asking the jury to speculate. Doc. 681 at 6-7, 10.

records show that BCBSLA made a benefits payment with respect to SCSH's claim on January 18, 2010, at which time SCSH knew, or should have known, that it had not been paid in accordance with representations allegedly made during the verification of benefits call.  SCSH, however, did not bring suit on this claim until the First Amended Complaint filed on June 22, 2011, 518 days later.  This claim is time-barred.

> ### F.    Plaintiffs' Claim Are Preempted

Apart from the other grounds discussed above, the Court should dismiss Plaintiffs' negligent misrepresentation claims on the basis of ERISA preemption, because Plaintiffs have admitted that these claims flow from the assignments of benefits they received.  Specifically, Plaintiffs asserted in a recent filing that "the duty owed to the Plaintiffs by Defendants *flows from G.H.'s assignment of benefits*."  Doc. 662 at 7 (emphasis added).  Furthermore, Plaintiffs stated that "[t]he bills addressed to her show that there was a breach of such duty."  *Id.* at 8; *accord id.* ("This case begins and ends with the patients…").  The Court acknowledged Plaintiffs' position regarding the primacy of the patient assignments in proving any duty owed by Defendants.  Doc. 665 at 3.  Plaintiffs' position, in this regard, is remarkable – it shows that their previous statements to the Court regarding the nature of their negligent misrepresentation claims were inaccurate (*e.g.,* Doc. 258 at 25) and requires the Court to consider whether Plaintiffs' negligent misrepresentation claims are preempted.  *Cf.* Doc. 297 at 14 (finding no preemption "because Plaintiffs bring all of the state law claims in their individual capacities[.]").

It is well-settled law that an assignee stands in the shoes of the assignor.  Doc. 243-1. Specifically, the assignee is subject to any defenses which may be brought against that claim.

*Quality Infusion Care, Inc. v. Health Care Services Corp.*, 628 F.3d 725, 728-29 (5th Cir. 2010)

*Herlitz Constr. Co., Inc. v. Matherne*, 476 So. 2d 1037, 1040 (La. App. 3d Cir. 1985); *Federal Saving & Loan Ins. Corp. v. McGinnis, Juban, Bevan, Mullins & Patterson, P.C.*, 808 F. Supp. 1263, 1273 (E.D. La. 1992).

It is equally well-established that G.H. (or any patient at issue in this litigation) could not bring a claim for negligent misrepresentation against any Defendant, as such a claim would be preempted by ERISA.  *See Hubbard v. Blue Cross & Blue Shield Ass'n*, 42 F.3d 942, 946 (5th Cir. 1995) ("We have also held that ERISA preempts state law claims of fraud, breach of contract or negligent misrepresentation that have the effect of orally modifying the express terms of an ERISA plan and increasing plan benefits for participants or beneficiaries who claim to have been misled."); *Memorial Hosp. System v. Northbrook Life Ins. Co.*, 904 F.2d 236, 245 (5th Cir. 1990) ("We have also held in this circuit that ERISA preempts state law claims, based on breach of contract, fraud, or negligent misrepresentation, that have the effect of orally modifying the express terms of an ERISA plan and increasing plan benefits for participants or beneficiaries who claim to have been misled.").

Accordingly, where, as Plaintiffs now contend, the cause of action "flows" from the assignment of benefits, then Plaintiffs must stand in the shoes of the assignor (*i.e.*, the patient). The patient would clearly not be able to maintain a negligent misrepresentation claim in relation to her ERISA plan benefits.  For this same reason, Plaintiffs cannot maintain the claim either. The Court should therefore dismiss Plaintiffs' negligent misrepresentation claims with prejudice

on the basis of ERISA preemption because Plaintiffs admit that these claims "flow[] from [the] assignment of benefits."

## V.    CONCLUSION

In short, based on the undisputed facts set forth in the Pre-trial Order and the evidence and testimony presented at trial, Plaintiffs do not have a legally sufficient evidentiary basis for establishing multiple essential elements of their negligent representation claim, specifically breach of duty, causation, and damages.  As such, judgment as a matter of law should be granted in Defendants' favor, and Plaintiffs' negligent representation claim should be dismissed with prejudice.

Respectfully submitted,

*/s/ Tyler J. Rench*
RICHARD J. TYLER (#1155)
COVERT J. GEARY (#14280)
MICHAEL C. DREW (#30884)
TYLER J. RENCH (#34049)
JOSEPH C. DAVIS (#35743)
Jones Walker LLP
201 St. Charles Avenue, Suite 5100
New Orleans, Louisiana 70170
Telephone: (504) 582-8336
Facsimile: (504) 589-8336
rtyler@joneswalker.com
cgeary@joneswalker.com
mdrew@joneswalker.com
trench@joneswalker.com
jdavis@joneswalker.com

*Attorneys for Defendants, BCBSLA, BCBSAL, BCBSMS, and BCBSNC*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing pleading was filed electronically on December 6, 2016. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

*/s/ Tyler J. Rench*