UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| THE CENTER FOR RESTORATIVE BREAST SURGERY, L.L.C., ET AL., | * * * |
| Plaintiffs, | * CIVIL ACTION NO. 11-806 * |
| VERSUS | * * |
| BLUE CROSS BLUE SHIELD OF LOUISIANA, ET AL., | * SECTION E (MORGAN) * * |
| Defendants. | * MAGISTRATE 5 (NORTH) * |

**************************************

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' F.R.C.P. RULE 56(d) MOTION TO ALLOW TIME FOR LIMITED DISCOVERY AND TO ALLOW CERTAIN RELEVANT DISCOVERY**

**NOW INTO COURT**, through undersigned counsel, come Plaintiffs, Center for Restorative Breast Surgery ("Center") and St. Charles Surgical Hospital ("SCSH"), who submit this memorandum in support of their F.R.C.P. Rule 56(d) Motion to Allow Time for Limited Discovery pursuant to the Court's December 19, 2016 Order. Doc. 705.

## I.  INTRODUCTION

Plaintiffs respectfully request that this Court grant a continuance to allow limited discovery, within a reasonable time, so that Plaintiffs can adequately oppose Defendants' motion for summary judgment.[1]

On December 5th and 6th of 2016, Plaintiffs' negligent misrepresentation claim, regarding 11 bellwether claims, was tried by a jury trial. During trial, Plaintiffs had the burden of proving three elements to succeed in their negligent misrepresentation claim: (1) there was a legal duty on the part of the Defendants to supply correct information; (2) Defendants breached that duty; and (3)

---

[1] On January 27, 2017, Defendants filed a motion for summary judgment. Doc. 709.

1

Defendants' breach caused damages to the Plaintiffs.[2] The jury returned a verdict in favor of Defendants because Plaintiffs were unable to satisfy one of the three elements necessary for negligent misrepresentation. For each bellwether claim, the Jury found that the Defendants failed to satisfy a duty to voluntarily disclose information to the Plaintiff regarding the allowable amount.[3] Accordingly, the jury interrogatories reveal that the Plaintiffs successfully proved that defendants had a duty, and that they breached that duty. Nevertheless, the jury did not render a verdict in favor of Plaintiffs because there was insufficient evidence to satisfy the final element of Plaintiffs' negligent misrepresentation claim, causation.

On December 19, 2016, this Court ordered that Defendants file a motion for summary judgment addressing the causation element with respect to the remaining negligent misrepresentation claims by Friday, January 27, 2017.[4] In the same order, this Court stated that Plaintiffs may file "by Friday, February 3, 2017, any Rule 56(d) motion."[5] In accordance with such order, Plaintiffs respectfully submit this motion requesting that this Court grant a continuance in order to allow further discovery limited to the issue of causation.

Recent news regarding the Louisiana Heart Hospital underscores the urgency, need, and reason for the Court to act. On February 1st, 2017, the New Orleans Advocate reported that this hospital is going out of business and that "shrinking reimbursement for medical care," is part of the reason for their closure.[6] Plaintiffs urge the Court to grant their 56(d) motion because, as this

---

[2] *See* Doc. 585 at 24, where this Court correctly stated the burden of proof for negligent misrepresentation claims under Louisana law.

[3] For each bellwether claim, the jury answered yes to question 6 of the jury interrogatories: "Did the Defendant fail to satisfy a duty to voluntarily dosclose information to the Plaintiff regarind how the allowavble was determined?" Doc. At 2, 3, 4, 7, 9, 11, 13, 15, 17, 19, 21.

[4] Doc. 705 at 1.

[5] *Id.* at 2.

[6] Faimon Roberts, *Louisiana Heart Hospital in Lacombe to file for bankruptcy, close within a month*, The New Orleans Advocate, 02/01/2017, http://www.theadvocate.com/new_orleans/news/communities/st_tammany/article_957c6240-e7bc-11e6-bfe6-473b13cbc25d.html.

memorandum and attached affidavits show, there is discovery that reveals that the Plaintiffs, the Center and SCSH, rely on fair reimbursement from insurance companies to properly run their businesses. Specifically, further discovery is needed on the issue of causation for Plaintiffs' negligent misrepresentation claim. Such evidence, including an expert opinion from Stephen George, is necessary to oppose Defendants' motion for summary judgment, and will show the genuine issues of material fact still exist.

Additionally, a continuance should be granted because, considering this Court's evidentiary rulings, more discovery is necessary to establish damages.[7] As the attached affidavits reveal, the representations made to Plaintiffs caused damages to the Center and SCSH because they can not properly run a healthcare facility if insurance companies do not disclose how much they will reimburse for particular procedures. Thus, while the Court's December 2nd ruling presently stands, Plaintiffs should be able to show the minuscule payments received have caused them damage and how this damage is apparent.

## II.   STANDARD FOR OBTAINING A RULE 56(d) CONTINUANCE

Rule 56(d) of the Federal Rules of Civil Procedure provides that:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1) defer considering the motion or deny it;
>
> (2) allow time to obtain affidavits or declarations or to take discovery; or
>
> (3) issue any other appropriate order.

---

[7] On November 22, 2016, the Honorable Susie Morgan ordered that "evidence of the cost of the Plaintiffs' services, lost profits, or economic harm beyond their bills is DEFERRED." Doc. 665. On December 2, 2016, this Court held that the amount Plaintiffs billed was irrelevant and that Plaintiffs would not be allowed to elicit testimony or introduce evidence related to amount historically reimbursed to Plaintiifs or other healthcare providers for the same services. Doc. 686.

3

"Rule 56(d) allows the district court to provide additional time for discovery before ruling on a motion if the nonmovant shows an inability to support its opposition factually."[8] A successful Rule 56(d) motion requires the movant to demonstrate "(1) why he needs additional discovery, and (2) how the additional discovery will likely create a genuine issue of material fact."[9] This rule is designed to "safeguard non-moving parties from summary judgment motions that they cannot adequately oppose."[10] Consequently, the Fifth Circuit holds, "Rule 56(d) motions for additional discovery are broadly favored and should be liberally granted."[11]

### III.   PLAINTIFFS HAVE DILIGENTLY PURSUED THE DISCOVERY THEY SEEK

"When the party opposing summary judgment informs the court that its diligent efforts to obtain evidence from moving party have been unsuccessful, a continuance of a motion for summary judgment for purposes of discovery should be granted almost as a matter of course."[12] Plaintiffs contend that they were diligent in its efforts to obtain discovery for the following reasons.

Plaintiffs were active in seeking discovery throughout the course of litigation. For instance, Plaintiffs filed a motion to compel discovery on March 30, 2016.[13] In the Plaintiffs' Request for Production to Defendants, Plaintiffs requested information that would reveal how much reimbursement BCBS gives other healthcare providers for the same or similar procedures performed by the Plaintiffs. Defendants failed to respond to, or acknowledge, Plaintiffs' Request for Production No.33. Plaintiffs believe that this information is important to establishing damages, and in diligent pursuit of discovery, filed their motion to compel.

---

[8] *Smith v. Regional Transit Authority*, 827 F.3d 412, 422 (5th Cir. 2016).
[9] *D & S Marine Transp., L.L.C., v. S & K Marine, L.L.C.,* 2015 WL 1322881, at 2 (E.D. La. 2015) (citing *Chenevert v. Springer,* 431 F. Appx. 284, 287 (5th Cir. 2011)).
[10] *Fruge v. Ulterra Drilling Technologies, L.P.,* 883 F. Supp. 2d 699 (W.D. La. 2012).
[11] *Am. Family Life Assurance Co. v. Biles,* 714 F.3d 887, 894 (5th Cir. 2013).
[12] *Castro v. Texas Dept. of Criminal Justice*, 541 Fed. Appx. 374, 377 (5th Cir. 2013).
[13] *See* Doc. 502 and Doc. 502.-1.

Plaintiffs' discovery pursuit was hindered by the Defendants. For instance, when this Court allowed additional discovery for Plaintiffs' ERISA claim[14], within a limited time frame, BCBSLA put forward Barbara Pace and identified her as a spokesperson. But, lo and behold, Ms. Pace was unable to give any answers, she testified that she did not have knowledge of the issues sought, and that Kent Graves, the manager of her department, would have better knowledge.[15] His name was never given by Defendants. Here is an example of what was put forward in the last discovery allowed by this Court:

```
22       Q.    And you are the head of the
23  department?
24       A.    No, I'm not.  I'm just an auditor.
25       Q.    Who is the head of the department?
```

```
23  BY MR. TAYLOR:
24       Q.    Miss Pace, based on your knowledge
25  and experience as an auditor for Louisiana
```

```
1   Blue Cross/Blue Shield, if I want to know how
2   your department works, would a better person
3   be Mr. Graves or yourself in your opinion?
4        A.    Probably Mr. Graves.  He's our
5   manager.
6        Q.    Thank you.  That's what I thought.
```

*Deposition of Ms. Pace pp 24 -26*

---

[14] Doc. 596 at 6.
[15] *See* Deposition of Barbara Pace, specifically pages 24 – 26.

Plaintiffs due diligence attempts were consistently thwarted and, in this case, there was no time to correct this behavior.

Next, Plaintiffs were diligent in their belief that causation could be established through testimony of Sarah Underwood, CFO, and Caprice Taylor, Director of Finance. However, Plaintiffs' method of proving causation was minimized. Defendants filed a motion in *limine* requesting this Court to prohibit evidence or testimony relating to the cost of plaintiffs' services, lost profits, and financial harm.[16] This Court deferred ruling on Defendants' motion *in limine* with respect to evidence of the cost of the Plaintiffs' services, lost profits, or economic harm beyond their bills.[17] On December 1, 2016, this Court held that "Plaintiffs will not be allowed to elicit testimony or introduce evidence related to the amounts historically reimbursed to them or other healthcare providers for these types of services provided by an out-of-network or in-network basis."[18] Moreover, Plaintiffs were prohibited from introducing testimony regarding the amount Plaintiffs bill the patients. The Court's reasoning was that "the witnesses and documents in support of this theory of recovery were not disclosed in answers to interrogatories, witness or exhibit lists, or the Pre-Trial Order.[19] However, the Plaintiffs acted diligently in disclosing their witnesses with financial knowledge to establish how BCBS's practices caused economic harm to the Center and SCSH. Defendants decided not to depose Ms. Underwood, Plaintiffs should not be penalized by their inaction.

As discussed above, Plaintiffs, in their Request for Production of Documents, asked BCBS to produce documents revealing the amount of reimbursement BCBS gives other healthcare providers

---

[16] R. Doc. 643-1 at 16.
[17] R. Doc. 665 at 6.
[18] R. Doc. 686 at 5.
[19] *Id.*

6

for the same or similar procedures performed by the Plaintiffs.[20] Additionally, Plaintiffs disclosed in their final will call witness list that these witnesses would discuss financial matters and losses relating to SCSH and the Center:

> Sarah Underwood, C.P.A., Sigma Delta Billing, LLC,
> 1717 St. Charles Avenue,
> New Orleans, LA 70130
>
> Ms. Underwood is expected to testify as to any and all *financial and insurance matters*, as to the charges for services provided to Plaintiffs' patients/ Defendants' insureds, as well as the *Plaintiffs' losses occasioned by the Defendants' actions.* Additionally, in as much as Plaintiffs have listed in the negligent misrepresentation presentation, any and all administrative records placed into evidence by Defendants, she will testify as to each and every aspect.
>
> Caprice Taylor, Director of Finance, Sigma Delta Billing, LLC,
> 1717 St. Charles Avenue,
> New Orleans, LA 70130
>
> Ms. Taylor is expected to testify as to the *policies and procedures regulating the verification of benefits, coding, billing and collections* by Sigma Delta Billing on behalf of the Plaintiffs, as well as to the *Plaintiffs' losses occasioned by the Defendants' actions.* Additionally, in as much as Plaintiffs have listed in the negligent misrepresentation presentation, any and all administrative records placed into evidence by Defendants, she will testify as to each and every aspect.[21]

Accordingly, the Defendants and this Court were notified that Sarah Underwood and Caprice Taylor would testify as to the losses suffered by SCSH and the Center. However, Plaintiffs means of proving causation were minimized by the prohibition of certain relevant evidence and testimony. Consequently, Plaintiffs filed a memorandum to this court explaining that Federal Rule of Evidence Rule 701 allows opinion testimony by a lay witness to establish facts, such as facts relating to a business' profits.[22] Thus, Plaintiffs believe their efforts reveal that they were active

---

[20] Doc. 502, 502-1.
[21] Doc. 647 at 2.
[22] Doc. 693 and 693-1 at 2.

in their pursuit of discovery; and given the policy of liberally granting 56(d) motions, Plaintiffs' 56(d) motion should be granted.

**IV.   FURTHER DISCOVERY IS VITAL TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
**V.**

Defendants claim that summary judgment is appropriate because there is no genuine issue of material fact relating to whether Defendants' breach caused the Plaintiffs damage. During the trial, the jury found that Defendants "failed to satisfy a duty to voluntarily disclose information to the Plaintiff regarding the allowable amount.[23] Thus, the Plaintiffs satisfied two elements of their negligent misrepresentation claim, duty and breach. However, there still exists a genuine issue of material fact regarding the final element, whether the Defendants breach caused the Plaintiffs damages. For the reasons stated below and found in the attached affidavits, Plaintiffs are entitled to further discover certain information vital to Plaintiffs' opposition to Defendants' motion for summary judgment.

First, a continuance to allow further discovery is necessary to oppose Defendants' motion for summary judgment because, as the attached affidavits reveal, the Defendants steered this Court away from the fact that the Plaintiffs in this suit are two business entities. The Defendants' argue that in order to satisfy the causation requirement for Plaintiffs' negligent misrepresentation claim, Plaintiffs' must show "that they would not have treated each of the relevant patients 'but for' the omission as to the dollar amount of benefits they could expect to receive for that treatment."[24] However, as the affidavits of Dr. DellaCroce and Dr. Sullivan reveal, whether or not the doctors decided to treat their patients is irrelevant to this case. Although Dr. Sullivan and Dr. DellaCroce are both doctors who work at the Center and SCSH, they are both managers of these two business

---

[23] Doc. 701 at 2, 3, 5, 7, 9, 11, 13, 15, 17, 19, 21.
[24] Doc. 709-1 at 7.

entities. This suit does not have to do specifically with the treatment of the patients or the doctors, it has to do with the businesses. At trial, the Honorable Susie Morgan correctly stated the standard for causation, and that the big question Plaintiffs' must answer is "what would not have happened but for the defendants' omissions?"[25] If the Defendants would not have made omissions to the Center and SCSH, the Center and SCSH could have, at the very least, properly billed their patients. As the affidavits and future discovery show, Defendants' representations to the Plaintiffs caused economic harm because the phone calls induced SCSH and the Center to forego billing the patients upfront. But for Defendants' omissions, Plaintiffs would not only have received more than a mere pittance, but also would avoid the costs associated with collection actions. Accordingly, there exist a genuine issue of material fact, as to the issue of causation, and further discovery should be allowed to oppose Defendants' motion.

As mentioned, supra., Defendants were successful in steering the conversation of this case away from the two corporate entities, who are the Plaintiffs, by not allowing any breach in Defendants' armor of "irrelevancy" or "privileged" and obscuring the obvious economic facts. Plaintiffs call this "Economics 101."

The manner in which the Blues manipulate the market and what they pay is relevant and has been reported.[26] As mentioned in *Deadly Spin*, *op cite* and a report to the Pennslvania Insurance Dept. authored by IMR Health Economics, LLC.,[27] manipulation of reserves and surplus not only artificially changes the insurer's bottom line, but gives them evidence to support lower pay to physicians, whether in or out of network.[28] Another device, used in this case, is paying out-

---

[25] *See* Trial Transcript for Day 2, p. 36 and 93.
[26] See, for example *Deadly Spin*, by Wendell Potter, Bloomsbury Press, 2010 at pages 120 – 146.
[27] Kirsch, *Report to the Pennslvania Insurance Dept concerning the applications of Blue Cross plans fofr approval of reserves and surplus*, IMR Health Economics, LLC. Sept. 2004.
[28] Baltic, "Out-of-network payments", Medical Economics which is located at
*http://medicaleconomics.modernmedicine.com/medical-economics/news/tags/billing/out-netwrok-payments*; "How

of-network charges to the patients instead of the physicians. "Insurers are coming up with ways to make life difficult for you so you'll come back to them."[29] This obvious damage, i.e., sending payments to patients instead of the physician or hospital, leads to economic damage in the form of increased costs. Ms. Taylor testified to this exact form of damages in her proffered testimony on the second day of trial.[30] Surely this creates a material fact regarding cause where additional discovery is required. Blue Cross Blue Shield writes the contract, enforces the contract that makes health care providers chase already impecunious payments, and has been found to breach its duty by a unanimous jury. There is a legion of articles that show, without any doubt, that Defendants manipulate their "bottom line" numbers. They do this overtly and in subtle ways. Thus, Plaintiffs should be allowed to further discover information pertaining to:

1) For each year from 2010 through 2014, for each defendant, how much, in dollars, each defendant wrote in premiums.
2) For each year from 2010 through 2014, for each defendant, how much, in dollars, each defendant paid out for physicians, hospitals, pharmacies, or other healthcare related claims.
3) For each year from 2010 through 2014, the amount of surplus reserved by each defendant.
4) For each year from 2010 through 2014, how much income did each defendant derive from the surplus.
5) For each year from 2010 through 2014, the amount was allocated to incurred but not reported amounts for each defendant.
6) For each year from 2010 through 2014, the amount of each defendants' salary, in dollars, including bonuses to CFOs, CEOs, and COOs.
7) For each year from 2010 through 2014, if defendants are a public stock corporation, the income per share.
8) For each year from 2010 through 2014, for each defendant, the amount spent on public relations, including lobbying costs.
9) For each year from 2010 through 2014, for each defendant, how much money was contributed to AHIP.
10) For each year from 2010 through 2014, the amount spent on administrative costs for each defendant.

---

Much is Too Much: Have Nonprofit Blue Cross Blue Shield Plans Amassed Excessive Amounts of Surplus?", ConsumerUnion, July 2010.
[29] American Medical News, 2005.
[30] Trial Transcript for Day 2, Dec. 6th, 2016 at 63, 64.

10

11) For each year from 2010 through 2014, for each defendant, the amount of income received from other sources, including real estate, etc.

There is a plentitude of information extant, and explains why and how Defendants cause damage,[31] and which requires further discovery. But, it is even more elemental than that. It is basic economics that anytime two business entities are in a relationship, where one's money increases and the other's money decreases, this represents damage in the relationship, and the breach of duty, already proven, shows that. Simply put, a unanimous jury found defendants breached their duty to inform where two businesses already were in a vastly unequal bargaining and financial relationship. Naturally, defendants will tell this Court such material is irrelevant, but, how can it not damage plaintiffs when, e.g., North Carolina BCBS' president receives a one million dollar raise in the face of claims of losing money under the A.C.A.[32] Transparency is the mother's milk of justice and only more discovery will uncover the extent of cause and damage.

As the attached affidavits illustrate, "something is rotten in Denmark."[33] Plaintiffs should be allowed discover this. Plaintiffs' expert, Stephen George, reveals in his affidavit that there exists a genuine issue of material fact as to causation and damages. The cited material reveals a roadmap that was not allowed to be discovered. Justice may be blind, but she is neither deaf nor dumb. F.R.C.P. 56(d) allows this Court the discretion to do what federal courts should: dispense justice. Justice that has been delivered after the injured has had a full and fair chance to prove their case.

BCBSLA says this Court should not allow a "do-over." Plaintiffs agree; however, there is nothing in the Bellwether Orders that prohibit further discovery or elaboration of the issues.[34] If

---

[31] Wendell Potter, *The Deadly Spin*, (2011).
[32] Murawski, "Blue Cross ekes out profit in 2015 despite ACA losses", News Observer, 2016.
[33] Shakespeare, *Hamlet*, Act 1, Scene 4.
[34] *See* Doc. 526 and 535.

11

the Plaintiffs are correct, then, the Court must act in accord with the liberal policy of granting F.R.C.P Rule 56(d) motions, and must exercise its discretion in the Plaintiffs' favor.

## VI. CONCLUSION AND REQUEST FOR RELIEF

For the reasons described above, Plaintiffs respectfully request that the Court deny or continue Defendants' motion for summary judgment and allow Plaintiffs to conduct limited discovery necessary to adequately oppose Defendants' motion for summary judgment pursuant to Rule 56(d).

Respectfully submitted,

/s/ Charles O. Taylor
CHARLES O. TAYLOR (#19869)
DAVID R. SHERMAN (#12015)
MEGHAN E. RUCKMAN (#32793)
CHEHARDY, SHERMAN, WILLIAMS,
MURRAY, RECILE, STAKELUM &
HAYES, LLP
One Galleria Boulevard, Suite 1100
Metairie, Louisiana 70001
Telephone:    (504) 833-5600
Facsimile:    (504) 833-8080
*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on this 3rd day of February, 2017, the undersigned electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send notice of electronic filing to all counsel of record and deliver password protected copies to counsel by electronic means.

/s/ *Charles O. Taylor*
───────────────────────────
Charles O. Taylor