UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CENTER FOR RESTORATIVE BREAST
SURGERY, L.L.C., ET AL.

CIVIL ACTION NO. 11-806

VERSUS

SECTION: "E" (MORGAN)

BLUE CROSS BLUE SHIELD OF
LOUISIANA, ET AL.

MAGISTRATE 5 (NORTH)

### AFFIDAVIT OF:   Stephen C. George, MBA-HA.

Now comes Stephen C. George, MBA-HA, who being first cautioned and sworn deposes and states as follows:

1. I submit this Affidavit in support of *Plaintiff's Rule 56(d) Motion to Allow Time for Limited Discovery.*

2. I am an actively licensed and insured Broker/Agent – Consultant, quoting and/or commissioning upon Life & Health, and Property & Casualty insurance and reinsurance both domestically and internationally.

3. I am a Federal Court qualified expert who has opened on 5 Federal Court cases, and have testified in Federal Court.

4. I am President and CEO of Provider Risk, LLC., a 21+ year established Florida Corporation specializing in Medical insurance, reinsurance, ERISA, Group Benefits, stop loss, and self-funded plans.

5. I am an MBA–HA graduate of University of Miami Executive Healthcare Management program, (2.5 year course of education delivered 8 hours on Saturdays) that required full time employment at a 250 bed acute care hospital, working in several areas including as a Revenue Auditor.

6. I have been employed at two major insurance companies as a Provider Relations Specialist with Travelers Health Network, and as a Risk Management Consultant at John Alden's Provider Markets.

7. I have opined on 37 cases without challenge. See CV for case Summary Detail.

8. The record presented to me for review detailed that Blue Cross failed to communicate higher discounts than had been agreed and accepted by CRBS. CRBS would rely on past reimbursements that had been agreed to BEFORE accepting additional Blue Cross Members and higher changing discounts. When Blue Cross failed to establish new agreement detailing LOWER reimbursements, and unilaterally just paid less without counter-offer and CRBS acceptance; Blue Cross breached its CRBS verbal contract. Blue Cross caused economic damage to CRBS by failing to counter-offer and obtain CRBS acceptance of lower reimbursements. (Complaint, unaudited Exhibit I, Affidavits from: Dr. Sullivan and Dr. DellaCroce, and their CPA, Sara Underwood)

9. The record presented to me for review detailed Blue Cross did not pay claims timely, and in some instances, <u>several years late</u> causing damage to CRBS. Not getting accurate or timely notice of reimbursements makes balance billing patients practically impossible. Not billing patients timely for a balance-billing patient obligation significantly increases accounts receivables ageing, bad debt, and materially reduces potential future patient balance-billing collections. (Complaint, unaudited Exhibit I, Affidavits from: Dr. Sullivan and Dr. DellaCroce, and their CPA, Sara Underwood)

10. Review of Exhibit A produced the following values (Column L & Q):
    i. <u>Average</u> Blue Cross PAID reimbursement being <u>11.6</u>% of Billed Charges
    ii. <u>Median</u> Blue Cross PAID reimbursement being <u>7.45</u>% of Billed Charges.

11.         Procedure codes (for dates of service 2009 – 2014) were not available at time of review to compare actual reimbursement performance of what was paid by Blue Cross and "accepted" over time, and in line with verbal agreement contract. However, Exhibit I, Median <u>reimbursement</u> of <u>7.45</u>% damaged CRBS, absent verbal counter-offer and/or historical acceptance by CRBS of Blue Cross unilaterally discounted reimbursements, and meeting of the minds. Meaning, where CRBS only received $7.45 cents on a (Billed Charge) dollar, Blue Cross caused CRBS damage. 7.45% means $1.0 - .0745 = 92\%$ discount would not even cover CRBS overhead costs, let alone profit margin. (Complaint, unaudited Exhibit I, Affidavits from: Dr. Sullivan and Dr. DellaCroce, and their CPA, Sara Underwood)

12. I would concur with affidavits signed by Dr. DellaCroce and Dr. Sullivan, and their CPA Ms. Underwood that insurance verification cannot be construed as physician agreement to medically necessary surgical care reimbursement(s) <u>prior to</u> actually performing surgery. Exhibit I states, "Benefits Verified" as typical <u>co-insurance</u> percentage plan eligible coverage (i.e. 50%, 60%, 70%, 80%, and 100%). The insurance verification function is routinely used to verify eligibility for benefits, and up-front patient "balance-billing" member payment obligation. Insurance verification is not construed to be CRBS passive acceptance to whatever Blue Cross wants to discount on medically necessary care *prior to* surgery. (Complaint, unaudited Exhibit I, Affidavits from: Dr. Sullivan and Dr. DellaCroce, and their CPA, Sara Underwood)

_____  Stephen George, MBA-HA

SWORN TO AND SUBSCRIBED
BEFORE ME, ON THIS 3 day of
FEBRUARY, 2017.


_____
NOTARY PUBLIC

ALEXANDER J. DONES
Notary Public, State of Florida
Commission# FF 216464
My comm. expires Apr. 17, 2019